THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES ALEXANDER, JR., Defendant-Appellant.

First District (2nd Division)  Nos. 62956-62958 cons.

Opinion filed June 8, 1976.

James J. Doherty, Public Defender, of Chicago (David W. Hirschboeck, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, David A. Novoselsky, and Renee G. Goldfarb, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

James Alexander, Jr. (Alexander), the appellant herein, was charged in three separate complaints with the offenses of assault as to fireman Boyce Coleman (Coleman) and assault and aggravated assault as to fireman Elijah Strickland (Strickland) under sections 12—1(a) and 12—2(a)(7) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, pars. 12—1(a) and 12—2(a)(7)):

"§12—1. Assault

(a) A person commits an assault when, without lawful authority, he engages in conduct which places another in reasonable apprehension of receiving a battery.

§12—2. Aggravated Assault

(a) A person commits an aggravated assault, when, in committing an assault, he:

\* \* \*

(7) Knows the individual assaulted to be a fireman engaged in the execution of any of his official duties."

After a bench trial defendant was found guilty on each charge and was sentenced to 360 days in the House of Correction on each charge to run concurrently.

On appeal defendant contends:

(1) That the State failed to prove the offense of assault as to Coleman beyond a reasonable doubt,

(2) That the State failed to prove the offense of aggravated assault as to Strickland beyond a reasonable doubt, and

(3) That the trial court erred in entering judgment on the charge of assault as to Strickland where a judgment had been entered on the greater offense of aggravated assault and both charges arose out of the same transaction.

It was the testimony of Coleman and Strickland that they were in uniform answering a call for an ambulance at 7101 S. Parnell at approximately 3 a.m., on June 15, 1975. When they arrived at that address, they found it to be a fire station. The fireman on watch told them that the injured person was in a tavern across the street called Gwen's Den. Coleman crossed the street to assist the injured woman. Strickland remained with the ambulance. While Coleman and Strickland were helping the injured woman into the rear compartment of the ambulance, they became engaged in an argument with two of the co-defendants, Michael Jones and John Jones, who are not the subjects of this appeal. Although the record is not at all clear, it would appear that the argument initially concerned the length of time it had taken the ambulance to arrive and whether the injured woman would be taken to St. Bernard's or Cook County Hospital. During the course of the argument the defendants used obscene, abusive and threatening language. The argument rapidly escalated into open hostility. The appellant herein, defendant James Alexander, Jr., arrived sometime after the onset of the confrontation.

The entire series of events lasted long enough for Coleman to have requested police assistance four times. Coleman first noticed defendant Alexander after he had returned from going to the firehouse for the second time to tell the fireman on watch to call the police. He then saw Alexander standing behind his partner, Strickland, with a tire iron raised over Strickland's head. Both Strickland and Coleman testified that Alexander stated that he intended to "bust his [Strickland's] brains out." Coleman, at this point, pushed Strickland aside and according to Coleman's testimony Alexander "backed up and presented hisself [*sic*] again." Coleman stated that no blows by the defendant ever made contact with him and that Alexander did not threaten him with the tire iron but did threaten his partner, Strickland, with it. Strickland testified that he did not see Alexander attempt to strike him at first but, after his partner pushed him away from Alexander, he saw Alexander with the tire iron up in the air and was "scared." Before the police arrived all three defendants got into the car and drove off. They were apprehended shortly thereafter and the tire iron was found in the car. Alexander denies ever having had the tire iron or having participated in the argument.

Defendant's first contention is that the State failed to prove the assault as to Coleman beyond a reasonable doubt since in his testimony Coleman

stated that Alexander did not threaten him with the tire iron:

"Q. And there was also Mr. Alexander who you have testified was threatening you with a tire iron.

A. He did not. I did not say that.

Q. He threatened your partner with the tire iron?

A. Yes."

The defendant argues that there can be no finding of guilty where the complaining witness admits that the defendant made no threat toward him.

The record in the present case indicates that the argument was an ongoing and continuing confrontation which extended over a period of time and was of at least sufficient duration for Coleman to leave four times to request police assistance. This was not a single isolated moment in time. Although the defendant's arguments focus solely on that point in time at which Alexander stood behind Strickland with a raised tire iron, we feel it necessary to consider the entire transaction.

The facts indicate that, although Coleman stated no overt threat was made by defendant directly to him, the defendant did threaten his partner, Strickland, both verbally and physically. After he had made his second request for police assistance, Coleman saw Alexander standing behind his partner with a tire iron raised over his partner's head. Alexander then stated he was going to "bust his [Strickland's] brains out." Coleman pushed his partner out of Alexander's way, whereupon Alexander "backed up and presented hisself [sic] again."

Since at trial neither the State nor the defendant developed this line of testimony, it is unclear from the record exactly what Alexander did when he "backed up and presented" himself again. Whether he "presented" himself to Strickland or Coleman or to both firemen is not stated. It does appear that both Strickland and Coleman were standing near enough to each other and to Alexander at that point in time so that Alexander could have had a present ability to threaten both firemen. It is clear that Alexander did not put down the tire iron or disengage himself from the ongoing argument at that point, since the record indicates he was still in possession of the tire iron and was swinging it after Coleman made his third request for police assistance.

■■  When a jury is waived, the credibility of the witnesses, the weight to be accorded their testimony, *and the inferences which may be drawn therefrom* are within the determination of the trial court since it observed the witnesses testify. (*People v. Pride*, 16 Ill. 2d 82, 156 N.E.2d 55.) (Emphasis added.) It is well established that in a bench trial the credibility of the witnesses and the weight to be given their testimony is within the province of the trial judge and any decision as to these matters

will not be set aside by a review-court unless the proof is so unsatisfactory as to create a reasonable doubt as to defendant's guilt. *People v. Brown*, 14 Ill. App. 3d 196, 302 N.E.2d 101; *People v. Pagan*, 52 Ill. 2d 525, 288 N.E.2d 102.

The trial court found that Coleman was in reasonable apprehension of receiving a battery while engaged in an altercation with defendant who was swinging a tire iron. Although Coleman never expressly testified that he was in reasonable apprehension of a battery, the obvious adversary relationship between the complainant and the defendant, Coleman's proximity to Alexander who was wielding a tire iron over another complainant's head, the ongoing nature of the confrontation, and the conduct of requesting police assistance on four separate occasions during the course of the argument would support the trial court's inference of reasonable apprehension.

For the above reasons we affirm the trial court's judgment of defendant's conviction of assault as to Coleman.

Defendant next contends that the State failed to prove the offense of aggravated assault as to Strickland beyond a reasonable doubt. He contends that Strickland could not have been placed in reasonable apprehension of receiving a battery since he did not see Alexander behind him with the tire iron over his head. Even if Strickland did not see Alexander at first, Strickland became aware of Alexander's presence when his partner, Coleman, pushed him out of the defendant's way. Strickland testified:

"Q. Now you say that James Alexander attempted to strike you with, what was it?

A. Jack handle.

Q. What, if anything, did you feel when he was attempting to strike you with it?

A. Well, I didn't see him attempt to strike me, but my partner pushed me and I seen him with the jackhandle up in the air.

Q. What kind of feeling did you have because of that?

A. Scared."

Both Coleman and Strickland then testified that thereafter Strickland was menaced by defendant swinging the tire iron so that it was necessary for Coleman to again summon police assistance. Coleman testified:

"Q. Then, after having made that next request for the police, what, if anything, did you do after you exited from the fire station?

A. We—I ran back out there with my partner and we were going—he is ducking him [Alexander] and I am ducking these two [Jones and Jones] * * *."

Certainly swinging a tire iron or jack handle in Strickland's direction so as to make it necessary for him to duck is sufficient conduct for the trial court

to infer that Alexander's conduct placed Strickland in reasonable apprehension of receiving a battery.

■■ The defendant further urges that, despite the eyewitness testimony of both Strickland and Coleman, the State failed to prove beyond a reasonable doubt that it was Alexander who had the tire iron. We find this contention without merit. It appears from the record that the question of Alexander's identity was never at issue. He admits to being present and the unimpeached testimony of both Coleman and Strickland identify him as the defendant with the tire iron. Although there were denials by Alexander and conflicting testimony from other defense witnesses, the trial court held that Alexander was guilty of aggravated assault as to Strickland.

When a jury is waived, the credibility of the witnesses, the weight to be accorded their testimony, and the inferences which may be drawn therefrom are within the determination of the trial court since it observed the witnesses testify. (*People v. Pride.*) A reviewing court should not substitute its judgment for that of the trial court when the evidence is merely conflicting. *People v. Sain*, 384 Ill. 394, 51 N.E.2d 557.

For the above reasons we would affirm the conviction of aggravated assault as to Strickland.

■■ Finally the defendant argues and the State agrees that, where the charge of aggravated assault is proven, the conviction of assault as to Strickland cannot stand since it arose from the same conduct as the aggravated assault conviction. We agree. Under the holding of *People v. Lilly*, 56 Ill. 2d 493, 309 N.E.2d 1, since both the charges of assault and aggravated assault of Strickland were based on the same conduct of the defendant, there can be only one conviction for the greater offense of aggravated assault, and the conviction for the lesser included offense of assault must be reversed.

Affirmed in part; reversed in part.

STAMOS, P. J., and HAYES, J., concur.