*In re* C.L. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. C.L. *et al.*, Minors, Respondents-Appellants.

First District (3rd Division)   Nos. 1—87—0245, 1—87—0247 cons.

Opinion filed February 22, 1989.

Randolph N. Stone, Public Defender, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago, for the People.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Respondents, C.L. and A.R., were charged with two counts each of aggravated assault in petitions for adjudication of wardship brought by the State. The trial court adjudicated respondents to be delinquent. The court credited C.L. for 30 days spent in custody and placed him on probation for one year. The court committed A.R. to the juvenile detention center for 25 days and also placed him on probation for one year. Respondents appeal.

The petitions in this case were based on respondents' alleged commission of the offense of aggravated assault against Earlean Collier and George Henderson. On October 22, 1986, at approximately 9 p.m., Earlean Collier and her husband, George Henderson, were at home with their children when they heard noise in front of their home. When Earlean and George went out to their front porch to investigate, they found one of their daughters having an argument with Tracy Smith, who lived next door. Earlean and George also saw A.R. at the scene. A.R. was wearing a black jogging suit with yellow stripes down the sides. George heard A.R. say that if George's daughter was going to fight Tracy, A.R. " 'was going to get into it.' " George then grabbed A.R. by the arm and told him he wanted to talk.

George led A.R. down the street and was talking to him when A.R.'s girlfriend approached them. A.R. told her to get C.L. " 'and tell him to bring that thing.' " While George and A.R. were talking, C.L., who was dressed like A.R., came up to them and asked A.R., " 'What's happening, man?' " When George told C.L. to give them "some space," C.L. left and walked over to Earlean's and George's porch.

When C.L. walked over to the porch, he told Earlean that she " 'better tell [George] to get away from [A.R.] because [A.R.] will pop him.' " Earlean testified that "pop" was street slang for "shooting." George returned to the porch as C.L. was leaving. While Earlean and George were on the porch, A.R. walked up, stood in front of the porch and said, " 'Don't nobody put his hands on me. You're going to pay for that.' " George then started walking off the porch to talk to A.R. "man-to-man." At that point, C.L. grabbed A.R. and said, " 'Man you don't got to take that shit.' "

Earlean testified that George then walked back up the stairs and said, "He's really got a gun." Earlean said, " 'What?' " and turned around to look at A.R. George then pushed her inside the house. Earlean testified that when she turned around "[h]e had the gun in his hand and [waved] it." Earlean stated that after George pushed her inside, "we went upstairs to call the police." Earlean also testified that black and yellow are the colors of the Vice Lords street gang. Earlean identified the respondents while they sat in a police car later that night.

George's testimony, some of which is included above, was substantially the same as Earlean's. He additionally testified that after he pushed Earlean inside the house, C.L. asked A.R., " 'Man do you want to pop?' " and A.R. yelled, " '[S]ay, let's pop,' " which George knew meant "shoot." George testified that when he heard that, he felt frightened because he didn't know "if he was going to shoot me or *** my wife." George further testified that, after he heard those words, he went upstairs and called the police. After the police arrived, they and George toured the area looking for the two boys. George identified the respondents after the police picked them up.

Opinion

■ We first address the State's argument that respondents have waived every issue they now raise due to their failure to file a post-trial motion. The State relies on Supreme Court Rule 660(a), providing that appeals from final judgments in delinquent minor proceedings are "governed by the rules applicable to criminal cases." (107 Ill. 2d R. 660(a).) Based on that rule, the State argues that the requirement

of a post-trial motion contained in section 116—1(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 116—1(b)) applied to the proceedings in this case. We disagree.

In contrast to the State, we construe the term "rules" as used in Rule 660(a) to mean simply the "supreme court rules" applicable to criminal appeals, not rules codified in the Code of Criminal Procedure or general rules of criminal trial practice. Section 5—18 of the Juvenile Court Act (Ill. Rev. Stat. 1987, ch. 37, par. 805—18), cited by the State at oral argument in support of its waiver argument, merely provides that, *inter alia*, the rules of *evidence* in criminal proceedings are applicable to delinquency hearings. Moreover, *In re Driver* (1977), 46 Ill. App. 3d 574, 360 N.E.2d 1202, has already rejected the State's argument. The court stated:

> "Driver is attacking a bench finding of wardship based on the evidence. And such an attack is analogous to a criminal defendant's appellate attack on the sufficiency of evidence to convict in a criminal bench trial. It has been held that the failure to file any post-trial motion in a criminal bench trial does not waive on appeal issues relating to the sufficiency of the evidence, errors in admission of prejudicial hearsay, and failure to grant a motion to suppress. [Citations.] This is not a case where the alleged error was not brought to the trial court's attention. In the instant case, no written motion was necessary to preserve the issue for review." *Driver*, 46 Ill. App. 3d at 575-76.

Respondents first contend that the trial court erred in allowing Earlean to testify that the colors yellow and black, the colors of jogging outfits worn by respondents on October 16, 1986, were the colors of the Vice Lords street gang. Respondents argue that seeing someone in a black and yellow jogging suit would not signify to a reasonable person that the wearer was in a street gang or place such a person in apprehension of receiving a battery from the person wearing the suit.

The State asserts that respondents misconstrue the term "reasonable" as used in section 12—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 12—1). The State contends, citing *People v. Alexander* (1976), 39 Ill. App. 3d 443, 350 N.E.2d 144, that "reasonable" as used in section 12—1 refers to a subjective, not objective, standard, *i.e.*, whether the particular victim involved reasonably apprehended receiving a battery under the circumstances of the case.

■ We cannot agree with the State that the standard employed in the statutory definition of assault is subjective. The element of reasonable apprehension is the traditional element of assault borrowed

from the law of torts. (Ill. Ann. Stat., ch. 38, par. 12—1, Committee Comments, at 406 (Smith-Hurd 1979).) It is therefore an objective standard: "the apprehension must be one which would normally be aroused in the mind of a reasonable person." (W. Keeton, Prosser & Keeton on Torts §10, at 44 (5th ed. 1984).) Unlike the State's standard, an objective standard bars consideration of the idiosyncratic characteristics of a particular victim such as extreme timidity or frightfulness. (W. Keeton, Prosser & Keeton on Torts §10, at 44 (5th ed. 1984).) However, we do not believe, as respondents imply, that it bars consideration of facts known to the victim of the assault about the alleged assailant in determining whether the apprehension of a battery was reasonable.

Rather, such knowledge may be taken into consideration as part of the circumstances of the case, which are always relevant to determining reasonableness. Earlean's knowledge that black and yellow are the colors of a street gang was therefore relevant and admissible to show whether a reasonable person with that knowledge would have apprehended a battery from another who was wearing those colors, acting belligerently toward the person and a loved one and carrying a gun.

Even assuming that it was error for the trial court to admit this evidence, we disagree with respondents that it was reversible error. In view of Earlean's and George's testimony, discussed more fully below, that C.L. was carrying a gun and George's testimony that A.R. and C.L. discussed shooting, we do not believe that a trial free of this evidence would have produced a different result. It was therefore harmless beyond a reasonable doubt.

■ In this regard, we disagree with respondents that the court compounded its error by barring evidence to rebut the inference of gang membership arising from Earlean's testimony. Respondents sought to introduce, through the testimony of Chicago police officer Ralph Gomez, the fact that the colors of Orr High School, near which this incident occurred, are black and gold. We agree with the State that Earlean's testimony was not introduced for the purpose of proving, or raising an improper inference of, gang membership. (See *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.) Therefore, the trial court need not have allowed respondents to rebut that inference. Moreover, absent an allegation that Earlean knew that the colors of Orr High School are black and gold, that fact was irrelevant to the reasonableness of her apprehension of receiving a battery by respondents.

■ Nor did the trial court compound its error by barring evidence that a "Crazy C" tattoo on C.L.'s arm was not gang-related. Absent evidence that Earlean was aware of the tattoo, any evidence as to its meaning was irrelevant to the reasonableness of her apprehension of a battery. Moreover, police officer Gomez, through whom respondents also sought to adduce this evidence, answered "no" when asked whether he knew what a "Crazy C" signified. There was thus no foundation for any testimony by him as to the meaning of the tattoo.

Respondents next contend that the trial court erred in admitting Officer Gomez' hearsay testimony that George Henderson told him that he and Earlean had a verbal altercation with two boys who had a gun and that A.R. was one of the boys.

■ Officer Gomez' testimony that Henderson identified A.R. as one of the boys was properly admitted under section 115—12 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1985, ch. 38, par. 115—12.) As required thereunder: (1) the out-of-court declarant, George Henderson, testified at respondents' trial and was subject to cross-examination and (2) the hearsay statement was one of identification of A.R. made after perceiving him. The hearsay statement was thus admissible as substantive and corroborative evidence. (*People v. Davis* (1985), 137 Ill. App. 3d 769, 771, 484 N.E.2d 1098.) *People v. Johnson* (1979), 68 Ill. App. 3d 836, 386 N.E.2d 642, cited by respondents, holds only that a hearsay statement of identification is inadmissible where, unlike here, the out-of-court declarant does not testify at trial and is thus not subject to cross-examination.

Moreover, Officer Gomez' testimony that George Henderson told him that he and Earlean had an altercation with two boys who had a gun was not incompetent hearsay. In *People v. Houston* (1974), 21 Ill. App. 3d 209, 213, 315 N.E.2d 192, *cert. denied* (1975), 420 U.S. 936, 43 L. Ed. 2d 412, 95 S. Ct. 1145, a police officer testified that he had a conversation with the victim of an intimidation " 'relative to two youths approaching *** and threatening her' " and that, as a result of that conversation, he arrested the defendants. What the court stated in rejecting a hearsay challenge to that testimony is dispositive here:

> "For two reasons, we do not agree that what the officer related *** was hearsay. Primarily, the officer was testifying *** only to the fact of what he had been told by [the victim] and not to the substantive truth of her assertion that [the defendants] actually intimidated her, and thereafter, only to what he did as a result of the conversation. He was explaining how he had come to arrest appellants for the instant offense. [Citation.]

Moreover, it is the lack of opportunity for cross-examination of the out-of-court declarant, whose assertion is being offered as substantive truth, that is the essential reason why the assertion must be rejected. [Citation.] Here, the out-of-court declarant *** testified in court and was thoroughly cross-examined by defense counsel. The rule against hearsay is not applicable to the facts of this case." *Houston*, 21 Ill. App. 3d at 213-14.

Respondents next contend the trial court deprived them of their right to effective cross-examination (U.S. Const., amends. VI, XIV) by prohibiting them from asking Earlean whether she was drinking on October 22, 1986.

When a defendant alleges the denial of the right of confrontation, the issue is whether the finder of fact was made aware of adequate factors to determine the witness' credibility, not whether any particular limitation has been placed on the defendant's ability to cross-examine the witness or whether the finder of fact has knowledge of any specific fact. (*People v. Newman* (1984), 123 Ill. App. 3d 43, 46, 462 N.E.2d 731; *People v. Hines* (1981), 94 Ill. App. 3d 1041, 1048, 419 N.E.2d 420.) A review of the record convinces us that, except for the prohibition complained of, the trial court afforded respondents sufficient opportunity to bring such matters to its attention as the trier of fact and thus did not violate their right to effective cross-examination.

Respondents note that evidence of intoxication or drinking around the time of an offense is admissible to attack a witness' perception and memory of the events to which she is testifying. They further note that such evidence is not collateral and may be introduced either in cross-examination or the defendant's case in chief. *People v. DiMaso* (1981), 100 Ill. App. 3d 338, 426 N.E.2d 972, the only case which respondents cite, and *People v. Morris* (1964), 30 Ill. 2d 406, 197 N.E.2d 433, the case underlying it, deal with situations where the principal issue is the identification of the accused. (*Morris*, 30 Ill. 2d at 409; *DiMaso*, 100 Ill. App. 3d at 342.) Here, however, identification was not the principal issue. Respondents never asserted at trial that they were the victims of mistaken identity. *Morris* and *DiMaso* do not require a finding of reversible error in the trial court's prohibition of further questioning of Earlean regarding her drinking on October 22, 1986.

Moreover, respondents were not so prejudiced by the trial court's action that a new trial is required. Before the trial court prohibited further questioning of Earlean concerning her drinking, she thrice responded to individual queries, albeit over the State's sustained objec-

tions, that she did not even drink. Respondents also ignore that defense counsel was subsequently allowed to ask Earlean whether she had a beer in her hand when she first came out to the porch. Earlean denied this allegation. Finally, respondents were allowed to impeach Earlean's denials without objection when Tracy Smith testified that Earlean had a beer in her hand when she appeared on the front porch.

Tracy's testimony was the only evidence in the record that Earlean was drinking. Contrary to respondent's assertion at oral argument, no defense witness testified that Earlean was or appeared intoxicated. Earlean specifically denied that she had been drinking. Additionally, James Riddle, also a defense witness, testified that Earlean did not have anything in her hand when she appeared on the front porch. There is thus a paucity of evidence in the record that Earlean had been drinking on October 22, 1986. Given that fact and defense counsel's failure to make an offer of proof to support his questioning of Earlean about drinking, respondents cannot complain that they were denied effective cross-examination. *Cf. People v. McCommon* (1979), 79 Ill. App. 3d 853, 865, 399 N.E.2d 224 (no error in prohibiting cross-examination of State's witness regarding drug use where there was no record evidence that he was using drugs at any relevant time and defense counsel did not make an offer of proof to support his inquiry).

Respondents next contend that they were not proved guilty of aggravated assault beyond a reasonable doubt. Respondents first assert that there was no evidence that Earlean apprehended receiving a battery from them and that the limited evidence of George's apprehension was controverted by his act of staying out on the porch while respondents talked about shooting, which was inconsistent with an apprehension of a battery.

■■ We cannot agree. The existence of reasonable apprehension of a battery is a question for the trier of fact. Its determination will not be disturbed unless it is against the manifest weight of the evidence. (*People v. Holverson* (1975), 32 Ill. App. 3d 459, 460, 336 N.E.2d 88.) It is not necessary that a victim expressly testify that he was in apprehension of receiving a battery to sustain a conviction. Rather, the fact finder may infer reasonable apprehension of a battery from the facts of the case (*People v. Chrisopulos* (1980), 82 Ill. App. 3d 581, 402 N.E.2d 912), including the conduct of the defendant and the victim (see *People v. Alexander* (1976), 39 Ill. App. 3d 443, 447-48, 350 N.E.2d 144). We believe that the conduct of respondents and the alleged victims was sufficient for the trial court to infer the latter's rea-

sonable apprehension of receiving a battery. We believe this notwithstanding Earlean's failure to expressly testify to such effect and George's allegedly inconsistent conduct.

■ Respondents also assert that inconsistencies in Earlean's and George's testimony, coupled with the defense evidence that neither respondent had a gun, raised a reasonable doubt of guilt. Specifically, they assert that Earlean testified that George saw the gun first and told her that A.R. had a gun. They also note Earlean's testimony that George then pushed her inside and went in right behind her. In contrast, they assert, George testified that Earlean saw the gun first in C.L.'s right hand and alerted him to that fact. They also note that George claimed he pushed Earlean inside but remained on the porch while A.R. and C.L. discussed whether they should shoot.

Preliminarily, we find unavailing respondent's reliance on the discrepancy, if any, between the testimony of Earlean and George as to which respondent held the gun. The State never contended at trial that respondents had more than one gun between them. Obviously, therefore, the State was relying on accomplice liability as to one respondent. Which respondent held the gun was thus irrelevant to the State's case as long as it proved that one of them held it and that the other aided and abetted his conduct. Ill. Rev. Stat. 1985, ch. 38, pars. 5—1, 5—2.

Moreover, respondents' contention that Earlean testified that she saw A.R. with the gun is without merit. Earlean testified on direct examination that, when he walked up to the porch after descending a second time to talk to A.R., George said, "He's really got a gun." She testified that she then turned around to look at A.R. before George pushed her inside. Thereafter, neither she nor the prosecutor named the boy who had the gun. Rather, they simply referred to "he," *e.g.*, "he's got a gun," "[h]e had the gun," "he held the gun." The fact that Earlean had turned around to look at A.R. does not compel the conclusion that A.R. was the "he" to whom Earlean and the prosecutor referred as holding the gun. Finally, respondents ignore Earlean's testimony on cross-examination. Defense counsel asked Earlean whether C.L. had not dragged A.R. away after C.L. had told A.R. that he did not have to take "that shit." Earlean responded, "When he said that, he had a gun in his hand. He was talking to [A.R.]." Defense counsel later asked Earlean, "You never saw [C.L.] shoot the gun?" and Earlean responded, "I saw him with a gun." These references, unlike those in Earlean's direct testimony, were clearly to C.L., not A.R. Thus, Earlean, like George, testified that C.L. held the gun.

We also find no discrepancy between Earlean's and George's testi-

mony regarding who saw the gun first. It is a reasonable inference from Earlean's testimony that George saw the gun first. However, George neither testified nor implied that Earlean saw the gun first. George testified that, after C.L. told A.R. he didn't have to take or listen to "that shit," C.L. approached him with an automatic pistol in his right hand. Only after so testifying did George state that Earlean told him "that boy has a gun." George's testimony thus corroborated Earlean's with respect to who saw the gun first. At most, it was inconsistent with hers as to who first *told* the other that one of the boys had a gun. That inconsistency is wholly inadequate to raise a reasonable doubt of guilt.

Earlean also testified that, after George told her that "he" had a gun and pushed her inside, "we went upstairs to call the police." George, on the other hand, testified on direct examination that he went upstairs and called the police *after* he heard respondents discuss whether they should shoot. Similarly, on cross-examination, George testified that after he pushed Earlean inside, he remained on the porch while respondents discussed shooting and then went inside to call the police.

Clearly, there was a discrepancy between George and Earlean as to when George went inside the house. However, it does not create a reasonable doubt of respondents' guilt. The discrepancy had no effect on the evidence regarding the elements of aggravated assault as to each victim. Specifically, it was unrelated to the issue and evidence of respondents' possession of a deadly weapon at the time of the incident. The State's evidence clearly proved that Earlean *and* George both saw C.L. with a gun. Moreover, respondents' conduct prior to the point in time at which Earlean and George saw C.L. carrying a gun and the fact that they saw C.L. doing so were sufficient grounds for the trial court to infer that both Earlean and George reasonably apprehended a battery from respondents. As such, whether George went inside right behind Earlean or stayed out on the porch and heard respondents discuss shooting is irrelevant.

In sum, the inconsistencies between Earlean's and George's testimony, either alone or together with the defense evidence, do not render the State's evidence *in toto* so unreasonable, improbable or unsatisfactory that they cast a reasonable doubt upon respondent's guilt. (See, *e.g., People v. Holiday* (1985), 130 Ill. App. 3d 753, 474 N.E.2d 1280.) Regarding the defense evidence that neither respondent had a gun but that C.L. was holding a silver belt buckle, it is axiomatic that a court of review will not substitute its judgment for the trier of fact where the evidence is merely conflicting. *People v. Daniels* (1984), 129

Ill. App. 3d 894, 473 N.E.2d 517; *People v. Porterfield* (1971), 131 Ill. App. 2d 167, 268 N.E.2d 537.

For all of the foregoing reasons, the judgment of the trial court is affirmed in its entirety.

Affirmed.

McNAMARA and RIZZI, JJ., concur.