2025 IL App (1st) 231634-U

No. 1-23-1634

Order filed February 25, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 224001018 |
| | ) | |
| JOSE MONDRAGON, | ) | Honorable |
| | ) | Kristyna C. Ryan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for aggravated assault over his challenge to the sufficiency of the evidence and his claims of ineffective assistance of trial counsel.

¶ 2    Following a bench trial, the trial court found defendant Jose Mondragon guilty of aggravated assault and sentenced him to 18 months of supervision. On appeal, defendant argues that the State failed to prove that he caused the complaining witness, Fernando Lopez, to have a

reasonable apprehension of receiving a battery. Defendant also raises several claims of ineffective assistance of trial counsel. For the following reasons, we affirm.

¶ 3                                      I. BACKGROUND

¶ 4      The State charged defendant with one count of aggravated assault on a public way (720 ILCS 5/12-2(a) (West 2022)).

¶ 5      At trial, Fernando Lopez testified that he was a rideshare driver. On January 17, 2022, Lopez responded to a request for an Uber in Cicero.[1] When he arrived at the pickup location, he saw defendant, whom he identified in court, and a woman standing outside. The woman, whose name was Deysi Emeterio, entered Lopez's vehicle and he began driving. Approximately 30 seconds later, defendant began following Lopez in another vehicle. For the next two to five minutes, defendant followed Lopez, turning when he turned and stopping when he stopped, which made Lopez feel "spooked." Lopez stopped in a left turn lane one car length before a red light at the intersection of 31st Street and Cicero Avenue, hoping that defendant would go around him. Instead, defendant drove in front of Lopez's vehicle and blocked it.

¶ 6      Defendant exited his vehicle and walked toward Lopez's driver side window, which was rolled down. Defendant asked why Lopez "stopped short of the light," "pulled his jacket back, and he showed that he had a badge," which was star shaped. Defendant was approximately one foot away from Lopez's vehicle. Lopez asked defendant if he was following him and "what was wrong with him." Defendant again pulled his jacket back, displayed a firearm, and asked Lopez if he "was gangster or hardcore." Defendant's firearm was in "full view" in a holster on his right hip

_____

[1]This incident occurred either shortly before midnight on January 16, 2022, or shortly after midnight on January 17, 2022. The exact date does not affect our resolution of this appeal, but we note this discrepancy in the record to avoid confusion.

and Lopez could see the firearm's handle and barrel. Defendant did not touch or draw the firearm. After defendant displayed his firearm, he told Lopez that he "could get blasted." Defendant was calm, but he was trying to be "intimidating and scary" by "barking orders." Lopez responded to defendant by saying, "Wow, really?"

¶ 7    Lopez testified as follows:

"Q. Okay. And you stated that you said, wow, really. How did you feel once he said that to you and seeing that [defendant] had a firearm?

A.  I was more so—the whole time, I was kind of in shock. I wasn't really nervous or scared. I was more so shocked that the whole incident was happening.

I kind of didn't think it was like—kind of like it didn't seem real, I was sitting here, like, this isn't happening. This—this can't be real. This is—I just didn't know what to think about the whole thing. Just more so shocked than anything else.

****

Like I said, I wasn't scared or anything. I thought he was more so, excuse my language, talking crap. I did take it that if I, like—part of me—like I said, I didn't move out of the car because, again, I didn't want to—I didn't want to provoke or anything just in case he wasn't in his right frame of mind and maybe pulled his gun on me, something like that."

Lopez acknowledged that defendant did not "directly" threaten him and did not say that he would injure, hurt, or beat Lopez. Defendant did not attempt to touch, grab, or strike Lopez.

¶ 8 Defendant then told Emeterio to get out of Lopez's vehicle. She did and left with defendant in his vehicle. Lopez remained at the intersection for approximately 30 seconds, then drove in the same direction as defendant and called police.

¶ 9 Cicero detective Roberto Alvarado testified that he interviewed defendant at a police station on February 20, 2022. When defendant arrived for the interview, he was wearing a Cook County Sheriff jacket and identification. He was also armed with a firearm and a magazine. Alvarado read defendant his *Miranda* rights and defendant agreed to speak with him. Defendant said that his girlfriend left his house in an Uber and defendant followed the Uber approximately 30 seconds later. Defendant could not provide "a definitive reason to as to why" he followed the Uber. On 31st Street, the Uber driver slammed on his brakes, which caused defendant to do the same. Defendant then "cut off the Uber driver *** at the intersection of 31st Street and Cicero Avenue," "exited his personal vehicle and then confronted the Uber driver at his driver's side" because the Uber's "erratic driving" upset him. Defendant said that "the wind had pushed back [his] jacket, exposing [his] badge and [his] firearm." Alvarado testified that he did not believe defendant's claim about the wind pushing his jacket back and later confirmed "[t]he weather was mild" on the date of the incident.

¶ 10 Alvarado also interviewed Lopez, who "said that he was startled being in this situation." A police report summarizing Lopez's interview did not indicate that Lopez said "he was in fear of receiving a battery." However, another report prepared by a different officer may have included such a statement.

¶ 11 Defendant testified that he was a deputy sheriff at the Cook County Department of Corrections. At approximately 11:50 p.m. on January 16, 2022, defendant and his girlfriend Deysi

Emeterio were at defendant's brother's house. Emeterio left in an Uber to go home and, shortly thereafter, defendant decided to go to her house as well. Defendant called Emeterio as he was driving. Approximately one minute after defendant left his brother's house, he caught up to a vehicle that was "brake checking," *i.e.*, stopping abruptly in front of defendant and forcing him to do the same. After the third "brake check," Emeterio said that the vehicle she was in was "stopping abruptly," and defendant realized that Emeterio was in the vehicle in front of him.

¶ 12    The Uber then stopped at a green light. Defendant was upset, so he pulled around the Uber, stopped approximately six feet in front of it, and exited his own vehicle. Defendant asked the Uber driver, Lopez, "[W]hy are you driving like an idiot?" and told Emeterio to get out of the Uber. Defendant had a firearm and badge but denied that he "purposely display[ed] [them] in a manner to try and intimidate" Lopez. Defendant was calm and did not scream at or threaten Lopez. He denied telling Lopez that "[he] could get blasted."

¶ 13    Defendant spoke with police on February 20, 2022. He told police that he was wearing "a button down" on the night of the incident and that he "talk[s] with [his] hands," so "maybe the wind or something happened that maybe [Lopez] was able to see" defendant's badge. Defendant testified that Lopez could not have seen his firearm because he kept the firearm "in the back."

¶ 14    Deysi Emeterio testified that defendant was her boyfriend. She was with defendant and his brother near West 28th Street and South Kolin Avenue at approximately 11:50 p.m. on January 16, 2022. Emeterio called an Uber to go home and waited for it outside with defendant's twin brother. Defendant was inside at the time. When the Uber arrived, Emeterio entered it by herself. During the drive home, the Uber driver, Lopez, was "brake checking," *i.e.* stopping and then going suddenly. Emeterio asked Lopez to cancel the ride and let her out multiple times, but he refused.

Emeterio was on the phone with defendant. She knew defendant was driving on the same street and in the same direction as the Uber, but she did not know that defendant's vehicle was directly behind the Uber.

¶ 15    When the Uber reached a red light, defendant drove around the Uber's left side and stopped in front of it, exited his own vehicle, and asked Lopez why he was brake checking. Defendant told Lopez that brake checking could cause an accident. Emeterio exited the Uber and entered defendant's car. Emeterio denied that defendant opened his jacket to display his firearm or that he did anything to intimidate Lopez.

¶ 16    The trial court found defendant guilty of aggravated assault. The court found Lopez and Alvarado credible and defendant and Emeterio not credible. The court explained that defendant used two potential weapons—his firearm and his vehicle—to threaten Lopez by blocking Lopez's vehicle, then approaching Lopez and saying "you can get blasted" while displaying his firearm. The court also reasoned that it would be "disconcerting" for a rideshare driver be followed late at night with a passenger in his car.

¶ 17    Defendant filed a motion for a new trial, arguing, in relevant part, that the State failed to prove him guilty beyond a reasonable doubt. The trial court denied defendant's motion and sentenced him to 18 months' supervision, scheduled to terminate on January 21, 2025. The court also ordered community service, anger management classes, fines, and no contact with Lopez.

¶ 18    Defendant filed a late notice of appeal, which our supreme court ordered that we treat as timely.

¶ 19                                II. ANALYSIS

¶ 20                                A. Jurisdiction

¶ 21 Before turning to the merits of this appeal, we consider our jurisdiction, as we have an independent duty to do. See *People v. Tolbert*, 2021 IL App (1st) 181654, ¶ 8 (citing *People v. Smith*, 228 Ill. 2d 95, 104 (2008)). Defendant's opening brief purports to invoke our jurisdiction pursuant to Supreme Court Rules 603 and 606. Rule 603 simply provides that a criminal appeal shall be taken to this court unless it concerns a statute that has been "held invalid" (Ill. S. Ct. R. 603 (eff. Feb. 6, 2013), and Rule 606 governs the perfection of an appeal (Ill. S. Ct. R. 606 (eff. Apr. 15, 2024)). Defendant filed his notice of appeal late, but our supreme court has ordered us to treat defendant's appeal as "properly perfected from the final judgment of the Cook County Circuit Court." The State's brief does not address jurisdiction.

¶ 22 Neither party has identified the Rule that gives us jurisdiction over this appeal, which is Rule 604(b). Rule 604(b) allows a defendant who has been placed under supervision, as defendant was in this case, to appeal the finding of guilt, the conditions of supervision, or both. See Ill. S. Ct. R. 604(b) (eff. Apr. 15, 2024); *In re Shatavia S.*, 403 Ill. App. 3d 414, 417 (2010). It appears that defendant's term of supervision has already terminated. However, even a successfully completed term of supervision can have future consequences for a defendant and can be used as an enhancing offense in subsequent prosecutions. *People v. Sheehan*, 168 Ill. 2d 298, 308 (1995). Accordingly, we have jurisdiction over this appeal regardless of whether defendant has successfully completed supervision. See *People v. Johnson*, 174 Ill. App. 3d 812, 814 (1988).

¶ 23 B. Sufficiency of the Evidence

¶ 24 Defendant contends that the State did not prove that he placed Lopez in reasonable apprehension of receiving a battery, which is an element of aggravated assault. See 720 ILCS 5/12-1(a), 12-2(a) (West 2022). When a defendant challenges the sufficiency of the evidence supporting

his conviction, we review whether, viewing the evidence in the light most favorable to the State, a rational trier of fact could find the elements of the crime beyond a reasonable doubt. *People v. Cline*, 2022 IL 126383, ¶ 25. We draw all reasonable inferences in the State's favor. *Id.* We do not retry the defendant, and we will not substitute our judgment for that of the trier of fact on matters of credibility or the weight of the evidence. *People v. McLaurin*, 2020 IL 124563, ¶ 22. A single witness's positive and credible testimony can support a conviction even if the defendant offers contrary evidence. *People v. Harris*, 2018 IL 121932, ¶ 27. We will reverse a conviction only if the evidence is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *Cline*, 2022 IL 126383, ¶ 25.

¶ 25    "A person commits aggravated assault when he or she commits an assault against an individual who is on or about a public way." 720 ILCS 5/12-2(a) (West 2022). "A person commits an assault when, without lawful authority, he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." *Id.* § 12-1(a). A battery occurs when a person "knowingly and without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." *Id.* § 12-3(a).

¶ 26    In this appeal, the only element of aggravated assault on a public way in dispute is whether Lopez had a reasonable apprehension of receiving a battery. We evaluate reasonable apprehension of receiving a battery under an objective standard, meaning that "the apprehension must be one which would normally be aroused in the mind of a reasonable person." (Internal quotation marks omitted.) *In re Gino W.*, 354 Ill. App. 3d 775, 779 (2005). This element may be inferred from the evidence, including the conduct of the defendant and the victim. *People v. Taylor*, 2015 IL App

(1st) 131290, ¶ 14. Generally, words alone are not sufficient to constitute an assault. *Id.* ¶ 15. Rather, "[s]ome action or condition must accompany those words before there is a violation of the [assault] statute." (Internal quotation marks omitted.) *Id.*

¶ 27    Viewing the evidence in the light most favorable to the State, a reasonable factfinder could conclude that defendant placed Lopez in reasonable apprehension of receiving a battery. Defendant followed Lopez's vehicle late at night for no apparent reason, blocked it at a traffic light, exited his vehicle, and approached to within one foot of Lopez's driver-side window. Defendant then displayed his badge and firearm and told Lopez he "could get blasted," which a reasonable person could interpret as a threat to shoot him. See *People v. Ivy*, 133 Ill. App. 3d 647, 655 (1985) (the defendant's threat to "blow [the victims] out of the house" could reasonably be interpreted as a threat to shoot them). Defendant's words and actions, taken together, constituted an assault.

¶ 28    Defendant argues that one must brandish a firearm to commit an assault, whereas he "never reached for, touched, brandished, or pointed his weapon." Pointing a firearm at another person in a threatening manner is *sufficient* to constitute an assault (*People v. Preis*, 27 Ill. 2d 315, 319 (1963)), but not *necessary* to constitute an assault. Rather, a defendant armed with a firearm can commit assault even if the victim does not see the firearm. See, *e.g.*, *id.* (the defendant told the victim "There is nothing left to do except to shoot you" while putting her hand in her pocket and standing up); *Ivy*, 133 Ill. App. 3d at 655 ("it is not necessary that the victim of an aggravated assault actually see the weapon before he may be said to be in reasonable apprehension of receiving a battery."); *In re Justin F.*, 2016 IL App (1st) 153257, ¶¶ 18-21 (the defendant reaching into his pocket and beginning to pull out a firearm constituted aggravated assault even though the victim did not see the defendant point the firearm at him); *People v. Astalus*, 2022 IL App (1st) 211077-

U, ¶¶ 26-27 (displaying a firearm's clip and threatening to "shoot this place up" constituted aggravated assault even though the defendant did not display the firearm itself or point it at anyone).[2]

¶ 29    Defendant also contends that telling Lopez he "could get blasted" was nonthreatening given defendant's "calm demeanor and law enforcement position." We disagree. The fact that defendant was not screaming when he implicitly threatened to shoot Lopez did not diminish the threat. On the contrary, defendant's calm demeanor could have indicated that he was entirely serious about that threat. Moreover, a law enforcement officer suggesting that he might shoot someone is a threat that any reasonable person would take very seriously. Defendant's arguments on this point ask us to interpret his words and actions in the light most favorable to him. That is not the standard of review in a challenge to the sufficiency of the evidence; rather, we must interpret the evidence in the light most favorable to the State. *People v. Jones*, 2023 IL 127810, ¶ 28.

¶ 30    Defendant argues that Lopez's response to defendant's behavior suggested that Lopez did not actually think defendant would use his firearm. For example, Lopez did not drive away or "take cover at the sight of the holstered gun." However, Lopez explained that he was trying to avoid provoking defendant because he was concerned defendant might "pull[ ] his gun." Lopez's concern was reasonable given that he could see that defendant's firearm was easily accessible at his right hip, making it possible for him to immediately carry out his threat. Additionally, driving away may

---

[2]We cite *Astalus* as persuasive authority pursuant to Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023).

have caused defendant to open fire, particularly because defendant indicated he was a law enforcement officer.

¶ 31     Further to that point, we reject defendant's suggestion that Lopez's fear of being shot was unreasonable because defendant indicated he was a law enforcement officer by showing his badge. Even if this incident were some sort of off-duty traffic stop caused by Lopez's "erratic driving," Lopez's fear of being shot would still be reasonable, as such incidents have resulted in gun violence before. See, *e.g.*, *Soller v. Moore*, 84 F.3d 964, 966-67 (7th Cir. 1996) (off-duty Milwaukee police officer followed a vehicle that was "driving erratically," approached it with his firearm displayed and, during an altercation, shot and killed a passenger of the vehicle).

¶ 32     Defendant cites *Taylor* as an example of a case in which "the record lacked indicia that the defendant would take action to harm the complainant." In *Taylor*, the defendant told the victim, "I'm going to get you. I'm going to kick your ass," but was not armed with a firearm or any other weapon. *Taylor*, 2015 IL App (1st) 131290, ¶¶ 13-17. Defendant dismisses that key fact as "a distinction without a difference," but we disagree. Defendant's display of a firearm is the critical difference between this case and *Taylor*. *Taylor* supports affirmance because it explains that a defendant commits assault when he displays a weapon *and* makes verbal threats, as defendant did in this case. *Id.* ¶ 15 (citing *Preis*, 27 Ill. 2d at 317; *People v. Floyd*, 278 Ill. App. 3d 568, 571 (1996); *People v. Alexander*, 39 Ill. App. 3d 443 (1976)).

¶ 33     Finally, defendant argues that the trial court erred in finding that he placed Lopez in fear of being struck by defendant's vehicle. To the extent the trial court made such a finding, we need not affirm it specifically. Rather, we can affirm the trial court's finding of guilt on any basis apparent from the record. See *People v. Johnson*, 208 Ill. 2d 118, 128 (2003). The evidence

established that defendant blocked Lopez's vehicle at an intersection, approached it on foot, displayed a firearm, and verbally implied that he could shoot Lopez. Taken together, that is behavior that would put any reasonable person in reasonable apprehension of being battered. Accordingly, we affirm defendant's conviction over his challenge to the sufficiency of the evidence.

¶ 34                    C. Ineffective Assistance of Counsel

¶ 35    Defendant also contends that trial counsel rendered ineffective assistance by (1) eliciting damaging hearsay about what Lopez told police, (2) failing to preserve an objection to Alvarado's testimony that he did not believe defendant, and (3) failing to object to the State's cross-examination of Emeterio.

¶ 36    To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must show that (1) counsel's performance was objectively unreasonable and (2) there is a reasonable probability the result of the proceeding would have been different but for counsel's deficient performance, *i.e.*, prejudice. *People v. Patterson*, 2014 IL 115102, ¶ 81. The standard of review for determining whether a defendant received ineffective assistance of counsel is *de novo*. *People v. Webb*, 2023 IL 128957, ¶ 23.

¶ 37                    1. Lopez's Statements to Police

¶ 38    Defendant first contends that his counsel "elicited that Alvarado believed the initial officer documented that Lopez said [defendant] placed him in fear of receiving a battery."

¶ 39    This claim of ineffective assistance concerns the following events at trial: During cross-examination, counsel asked Alvarado whether, during his interview of Lopez, Lopez said that "he was in fear of being battered or injured." Alvardo answered that he could not recall Lopez's "exact

verbiage, but it was to the effect that he said he was startled being in the situation and the incident itself." Counsel then tried to refresh Alvarado's recollection with his police report, and Alvarado explained that his report was a summary that did not "include any and all verbiage that's taken by victim's or witnesses." Alvarado then acknowledged that his report did not "specifically state that [Lopez] told [Alvarado] that he was in fear of receiving a battery." On recross examination, defense counsel again asked Alvarado if his report stated that Lopez said he was in fear of receiving a battery. Alvarado responded, "In my report, no, due to it being a summation, but I believe that's disclosed in the initial report," which was prepared by an unidentified officer.

¶ 40　We find that defendant has not established prejudice. There is no indication that the trial court's determination of guilt turned on this single line of testimony during Alvarado's recross examination. Rather, the trial court's finding of guilt was based on defendant following Lopez's vehicle late at night, blocking his vehicle at an intersection, displaying a firearm, and saying, "[Y]ou can get blasted." Even if the court had sustained defendant's objection and excluded Alvarado's testimony about the initial officer's report, the court still could have found defendant guilty for the same reasons. In addition, the court acknowledged the parties' dispute about "whether or not [Lopez] was in imminent fear or *** apprehension of receiving a battery" and mentioned that Lopez testified that he was "in shock" and "a little nervous." We agree with defendant that the trial court's admission of Alvarado's testimony over defendant's objection indicates that the court considered that testimony to at least some degree in reaching its verdict. See *People v. Smart*, 2023 IL App (1st) 220427, ¶ 37. However, that does not mean the admission of this testimony prejudiced defendant under the *Strickland* standard because there is no indication this testimony changed what would have been an acquittal into a verdict of guilt.

¶ 41 Defendant contends that "Alvarado's statement that counsel elicited was the *only* evidence in the record that Lopez felt fear of receiving a battery." (Emphasis in original.). It is true that this was the only *direct* evidence that Lopez said the words "fear of receiving a battery." However, as explained above, circumstantial evidence supported the conclusion that Lopez feared that defendant would shoot him if he provoked defendant. The State may prove the elements of an offense by circumstantial evidence. See *People v. Kiertowicz*, 2013 IL App (1st) 123271, ¶ 20 (citing *People v. Hall*, 194 Ill. 2d 305, 330 (2000)). Accordingly, we reject this claim of ineffective assistance of counsel.

¶ 42                   2. Failure to Raise Alvarado's Testimony in Posttrial Motion

¶ 43 Defendant next argues that counsel rendered ineffective assistance by failing to preserve his objection to Alvarado's testimony that he did not believe defendant's claim that the wind pushed his jacket or shirt back, revealing his firearm and badge to Lopez. During trial, counsel objected to that testimony as an improper opinion and the court overruled his objection. Defendant's complaint is that counsel did not raise that issue in a posttrial motion, thereby forfeiting it for appeal.

¶ 44 Our supreme court has rejected such claims as "without merit" because "on a claim of ineffective assistance of counsel for failing to properly preserve issues for review, [a] defendant's rights are protected by Supreme Court Rule 615(a), which allows a court to review unpreserved claims of plain error that could reasonably have affected the verdict." *People v. Coleman*, 158 Ill. 2d 319, 349-50 (1994); see also *People v. Cortes*, 181 Ill. 2d 249, 296 (1998); Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). These cases are dispositive, and we similarly hold that trial counsel did not render ineffective assistance by not raising this issue in a posttrial motion. See *People v. Ramos*,

318 Ill. App. 3d 181, 187 (2000). Defendant has not raised this evidentiary issue on appeal or sought plain error review of it, so we cannot see how trial counsel's supposed forfeiture of this issue prejudiced defendant.

¶ 45                    3. Failure to Object During Emeterio's Cross-Examination

¶ 46    Finally, Defendant contends that counsel failed to object to the State's attempts to impeach Emeterio with her statements to police. Defendant argues that, on three occasions during Emeterio's cross-examination, counsel did not object or "move[ ] to strike" Emeterio's testimony when the State "improperly injected prejudicial inadmissible hearsay"— a police report—the contents of which were not "properly admitted" and with which the State never "properly confronted" Emeterio.[3]

¶ 47    " 'As a general rule, trial strategy encompasses decisions such as what matters to object to and when to object.' " *People v. Ramsey*, 2017 IL App (1st) 160977, ¶ 36 (quoting *People v. Pecoraro*, 144 Ill. 2d 1, 13 (1991)). Matters of trial strategy generally do not support a claim of ineffective assistance of counsel. *People v. Beck*, 2019 IL App (1st) 161626, ¶¶ 31-32.

¶ 48    In two of the three instances defendant identifies, trial counsel *did* object. The State asked Emeterio, "Do you also remember telling the police *** that your boyfriend was following you in his vehicle," and Emeterio denied making such a statement. When the State asked, "So would it surprise you to learn that's what's stated in the report?" defense counsel immediately objected. Similarly, when the State asked Emeterio. "Do you remember telling the police, when you spoke to them, that you were not under duress or threat at any time?" defense counsel objected to the

---

[3]Defendant's arguments on this point conflate whether the testimony the State elicited was *actually admissible* with whether defense counsel was ineffective for not objecting to the State's questions.

question as eliciting hearsay. The trial court overruled both objections, but there is no merit to defendant's claim that counsel rendered ineffective assistance by failing to object.

¶ 49    The third instance defendant identifies concerns the following exchange:

"[THE STATE]: Were you cooperative when you spoke to the police when they interviewed you back in February of last year?

[EMETERIO]: That was after—not the night they called, the one I went in for?

Q. Correct, yes.

A. Yes, I did.

Q. Okay. So would it surprise you to learn that the police report says that you were not, in fact, cooperative.

A. Yes, because I was there for more than an hour.

Q. You didn't answer every question that they gave?

A. I didn't know the answer to their questions. I didn't have anything to say, so I didn't have an answer."

¶ 50    As defendant's brief acknowledges, this exchange could be described as a "botched impeachment." Defense counsel likely decided not to interrupt it for strategic reasons. Furthermore, we cannot see how counsel's decision not to object during this muddled exchange prejudiced defendant within the meaning of *Strickland*, *i.e.*, that the outcome of trial would have been different had counsel objected. See *Patterson*, 2014 IL 115102, ¶ 81. Whether Emeterio cooperated with police during an interview the month after the incident had little bearing on whether defendant committed aggravated assault. Even if this entire exchange had been stricken, the court could have found defendant guilty for the same reasons.

¶ 51    That said, we do not endorse an Assistant State's Attorney recitation of a police report's contents and asking a witness if she would be "surprised" by them. Police reports are not admissible evidence precisely because they contain hearsay and conclusions. *People v. Herndon*, 2015 IL App (1st) 123375, ¶ 40; *Kociscak v. Kelly*, 2011 IL App (1st) 102811, ¶ 25. The State's cross-examination tactic in this case was an end-around on that well-established rule. Nevertheless, defendant has failed to establish this claim of ineffective assistance.

¶ 52                              III. CONCLUSION

¶ 53    For the foregoing reasons, we affirm defendant's conviction for aggravated assault.

¶ 54    Affirmed.