2022 IL App (1st) 191758-U

No. 1-19-1758

Order filed May 3, 2022

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19120279201 |
| | ) | |
| GARRY KING, | ) | Honorable |
| | ) | Clarence Burch, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The State proved defendant guilty of aggravated assault beyond a reasonable doubt because a transit employee was placed in reasonable apprehension of receiving an imminent battery from defendant.

¶ 2    Following a bench trial, defendant Garry King was found guilty of aggravated assault and sentenced to six months' probation.[1] On appeal, defendant contends the evidence was insufficient

---

[1]Defendant's probation terminated on November 21, 2019. Even though defendant has served his sentence, his appeal is not moot. *People v. Jones*, 215 Ill. 2d 261, 267 (2005); *People v. Vanhoose*, 2020 IL App (5th) 170247, ¶ 21.

to prove beyond a reasonable doubt that his conduct placed a Chicago Transit Authority (CTA) employee in reasonable apprehension of receiving an imminent battery. We affirm.

¶ 3      The State proceeded to trial against defendant on one count of aggravated assault against a transit employee (720 ILCS 5/12-2(b)(8) (West 2018)).

¶ 4      At trial, the State called Donald McGraw (McGraw), a customer service assistant for the CTA, to testify. On February 23, 2019, McGraw wore his CTA uniform and worked at the Roosevelt and State CTA station. While on duty, McGraw heard a commotion. He approached the area of the commotion and saw two women coming in his direction, pointing backwards. McGraw saw defendant walking behind the two women and heard him say, "[y]ou white b*** need to get the f*** out the way." He approached defendant, who stated, "[o]h, it's you, you mother*** from 63rd." McGraw explained he "had previous problems with the man." Defendant told McGraw, "[y]ou old gray-haired motherf***, I got something for you today." McGraw observed defendant set down the bag he was carrying, reach in, and pull out a red brick, similar to one that goes in a wall. Defendant held the brick in his hand to his side while saying, "I'm-a f*** you up today" and "tried to attempt to step towards [McGraw] with it."

¶ 5      The police, who were assigned to the station that day, happened to be coming up the escalators as McGraw was going to try to get them. As the officers were approaching, McGraw reported, "[t]his guy here's [sic] got a brick. He's trying to attack me." The officers came forward and stepped between McGraw and defendant.

¶ 6      On cross-examination, McGraw testified he recognized defendant on the day of the incident as they had exchanged words in the past, but he did not know defendant made several complaints to his supervisors against him. McGraw explained his job was to monitor the station, assess the situation if a disturbance occurred, and determine whether the police should be called.

He was standing at his assigned booth in the unpaid area of the station when he first heard the commotion involving the women, which occurred on the other side of the turnstiles in the paid area of the station. McGraw did not call the police when he observed that defendant was involved in the commotion but knew the police were in the station.

¶ 7    McGraw estimated defendant was about 10 to 12 feet away when he reached into his bag and "came out with the brick." Defendant held the brick near his hip but did not raise the brick above his head or throw it. McGraw could not see inside the bag to know whether other bricks were in the bag.

¶ 8    On redirect, McGraw stated he "felt threatened" when he saw defendant holding the brick in his hand. He explained defendant said he "was going to f*** [him] up," and felt defendant "was going to follow through, because he had one foot forward to step as if he was going to hit [him]." McGraw remembered the police were downstairs and was going to yell for them, but "[t]hey were coming right up at the time [defendant] was in the position to do what he was doing."

¶ 9    Chicago police officer Raymond Haran testified he was on duty in plain clothes assigned to the Roosevelt CTA station on the day of the incident. After hearing a disturbance coming from the top of the station's mezzanine level, Haran and his partner left the platform area downstairs and went upstairs to investigate. They encountered McGraw and defendant "arguing loudly." McGraw stated that defendant "had threatened [him], and it's happened in the past; and he wanted him arrested." Haran and his partner went to talk to defendant, who had a brick in his hand. Haran removed the brick from defendant's hand, and defendant was arrested.

¶ 10    On cross-examination, Haran stated "we could hear him yelling" from the platform level. After the officers went up to the mezzanine level, he "saw them arguing" and yelling at each other.

¶ 11   Defendant testified in his own defense. On February 23, 2019, defendant was headed home, traveling on the Green Line to make a transfer to the Red Line. He was carrying a bookbag on his right shoulder that contained his personal belongings, including three bricks, and he carried one additional brick in his hand the entire time he tried to transfer from the Green Line upstairs to the Red Line downstairs. Defendant explained he has a permanent disability that makes it hard for him to stand and walk for periods of time, and he planned to use the bricks to make a stepstool for his home.

¶ 12   While transferring from the Green Line upstairs to the Red Line downstairs, defendant encountered McGraw. He recognized McGraw from other incidents and events where McGraw "harassed" him. Defendant mentioned a prior incident at the 63rd Street rail station where McGraw had him removed from the platform. Defendant filed a complaint with the CTA over that incident and filed another complaint relating to the February 23rd incident. He had also filed a complaint with the Chicago Police Department. Defendant questioned McGraw's "mental health" and thought the CTA would do something to "rectify him as an employee *** because of the extreme circumstances that [he has] complained to them about."

¶ 13   On the day of this incident, defendant did not approach McGraw, explaining that "[e]very time I see this employee, he taunts me. He laughs at me, he verbally abuses me." Defendant stated he tried to stay away from McGraw and "immediately exited the station" when he saw him that day. Defendant denied saying anything to McGraw or threatening him with a brick. He also claimed there were "no ladies" near him at that time.

¶ 14   When defendant saw the undercover police officers, he was still holding the brick in his hand but set it down when ordered by the police. Defendant denied any involvement in a shouting match, arguing with McGraw, and saying anything to him. He also denied telling McGraw, "I'm

going to f\*\*\* you up" and "I've got something for you." He further denied pulling the brick out of his bag, explaining he had the brick in his hand the entire time because his disability made it very hard for him to carry large amounts of weight, and all four bricks could not fit perfectly into one bag with his other belongings.

¶ 15     On cross-examination, defendant testified that he informed the police he planned to make a stool with the bricks and held the brick because the size of his bag made it too hard for him to carry it on his back, but he "still was falsely jailed."

¶ 16     Following closing arguments, the trial court found defendant guilty of aggravated assault and sentenced him to six months' probation. Defendant filed a posttrial motion for a new trial and reconsideration of his sentence, which the trial court denied. Defendant timely appealed.

¶ 17     On appeal, defendant argues the evidence was insufficient to prove beyond a reasonable doubt that his conduct placed McGraw in reasonable apprehension of receiving an imminent battery.

¶ 18     When a defendant challenges the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the State, " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 125117, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The State bears the burden of proving beyond a reasonable doubt every element of an offense. *People v. Gray*, 2017 IL 120958, ¶ 35. We will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *Id.*

¶ 19     An individual commits the offense of assault "when, without lawful authority, he or she knowingly engages in conduct that places another in reasonable apprehension of receiving a

battery." 720 ILCS 5/12-1(a) (West 2018). As charged here, an aggravated assault is committed when an individual knows the person being assaulted is a transit employee performing his or her official duties. 720 ILCS 5/12-2(b)(8) (West 2018). Defendant does not dispute the aggravating factor of knowing McGraw was a transit employee performing his official duties. He only contends the evidence failed to establish McGraw was placed in reasonable apprehension of receiving an imminent battery.[2]

¶ 20    The trier of fact determines whether the defendant's conduct placed the victim in reasonable apprehension of receiving an imminent battery. *In re Justin F.*, 2016 IL App (1st) 153257, ¶ 17. The element of "reasonable apprehension" is judged by an objective standard and may be inferred based on the conduct of both the victim and defendant. *People v. Taylor*, 2015 IL App (1st) 131290, ¶ 14. Words alone generally are not enough to constitute an assault and some action or condition must accompany the words to find a reasonable apprehension of a battery. *Id.* ¶ 15. The victim's apprehension must be of an immediate or imminent battery, not harm to occur in the indeterminate future. *Vanhoose*, 2020 IL App (5th) 170247, ¶ 26.

¶ 21    After viewing the evidence in the light most favorable to the State, we conclude there is more than sufficient evidence to prove beyond a reasonable doubt that McGraw was placed in

---

[2]Defendant also notes, as he did in the trial court, there was a variance in the specific conduct alleged in the complaint and the testimony at trial. However, defendant fails to develop an argument that there was a fatal variance or he was not sufficiently apprised of the charge, and cites no legal authority in support thereof, resulting in the forfeiture of any such contention. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (argument section of appellant's brief must contain the appellant's contentions, the reasons therefor, and citation to authorities); *People v. Ward*, 215 Ill. 2d 317, 332 (2005) (a point raised in a brief must be supported by citation to relevant authority to avoid forfeiture). Moreover, there was no fatal variance because the State's burden was to prove beyond a reasonable doubt the essential elements of the offense and not the specific conduct alleged in the complaint. *People v. Thomas*, 137 Ill. 2d 500, 522 (1990) (if the facts in question are not elements of the offense, any variance between the alleged facts and the evidence at trial is not fatal); *People v. Burdine*, 362 Ill. App. 3d 19, 24, (2005) (a variance between the conduct named in the complaint and the act proved is not considered fatal).

reasonable apprehension of receiving an immediate or imminent battery from defendant. McGraw testified that, after he investigated a commotion involving defendant shouting profanities at two women, defendant told him, "I got something for you today." Defendant then set his bag down, reached into the bag, pulled out a brick, and held the brick in his hand. While still holding the brick, defendant verbally threatened McGraw, stating "I'm-a f*** you up today," and had "one foot forward to step as if he was going to hit [him]" with the brick but was interrupted by police. The evidence showed defendant held the brick until the police removed it from his hand.

¶ 22     Although verbal threats alone are insufficient to establish reasonable apprehension, defendant did more than issue verbal threats. The sequence of events establishes that defendant's threats were coupled with his outward physical actions. Specifically, defendant threatened McGraw, retrieved and held an object capable of causing an injury, and threatened McGraw again while he "tried to attempt to step towards [him]." *See Taylor*, 2015 IL App (1st) 131290, ¶ 18 (mere words alone are insufficient to place a person in reasonable apprehension of receiving a battery); *People v. Floyd*, 278 Ill. App. 3d 568, 571 (1996) (some action must accompany words to constitute an assault). Therefore, this is not a case where defendant's threats consisted of mere words; nor was it necessary for defendant to throw the brick or raise it over his head to find reasonable apprehension.

¶ 23     Also, relevant to determining the element of "reasonable apprehension" was that McGraw had previous problems with defendant. See *In re C.L.*, 180 Ill. App. 3d 173, 178 (1989) (facts known to the victim about the alleged assailant may be considered in determining whether the apprehension of a battery was reasonable). Moreover, McGraw "felt threatened" when he saw defendant, whom he has had previous problems with, holding the brick and move as though he would follow through with his threats. McGraw reported those fears to the police upon arrival and

warned them of defendant's possession of a brick. A rational trier of fact could find McGraw's apprehension of receiving an imminent battery from defendant reasonable. See *Vanhoose*, 2020 IL App (5th) 170247, ¶ 25 (apprehension may be inferred from the defendant's and victim's conduct).

¶ 24    Defendant argues the evidence was insufficient because any threat associated with "I'm a f*** you up today" connoted a future, rather than an imminent, harm. Defendant's contention is contradicted by the record because his verbal threats were simultaneous with him holding the brick in his hand and having "one foot forward to step as if he was going to hit" McGraw before police intervened. Those combined actions demonstrated the threatened harm was imminent, rather than a future harm. *In re Justin F.*, 2016 IL App (1st) 153257, ¶ 21 (words accompanied by defendant starting to pull a gun from his back pocket was sufficient to find a reasonable apprehension of an imminent battery). Likewise, any rational trier of fact could find defendant holding a brick from 10 to 12 feet away and attempting to step towards McGraw while making threats during a hostile encounter constituted close enough range to support a reasonable apprehension of an imminent battery. Here, in viewing the evidence in the light most favorable to the State, we find the evidence was not so unreasonable, improbable, or unsatisfactory to raise a reasonable doubt of defendant's guilt of aggravated assault. *Gray*, 2017 IL 120958, ¶ 35.

¶ 25    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 26    Affirmed.