Tilghman C. J.
after briefly reviewing the facts, proceeded thus: — The right of the justice to enter on the defendant’s land, against his will, was the point principally contested on the trial, as it has been in the argument here. I shall therefore confine my opinion to that point, barely remarking as to the rest, that if the jury founded their verdict on the circumstance of the defendant raising his arm, at the first entrance, they were wrong, because, according to the • evidence as reported by the judge, the action of raising the arm was accompanied with words which shewed that the defendant was determined not to strike. It has been contend-1 ed, on the part of the commonwealth, that the justice had a right to enter the defendant’s yard for two reasons. 1. Because there was a breach of the peace. 2. Because the justice had a right to convict those persons who were breaking the Sabbath, on his own view. To prove that there was a breach of the peace, it is said, that by the constitution of ■Pennsylvania all indictments must conclude against the peace and dignity of the commonwealth. But this is mere matter of form. Before the revolution, the conclusion was against the peace of the king, his crown and dignity. Under a change of circumstances it was necessary to have a change of form, but. not a change of substance. There was no necessity for enlarging the circle of cases, in which it is lawful to break the doors of a man’s house; for where there is a breach of the peace, doors may be broken. At first view, it may seem extraordinary that a man should be protected in his own house against legal process of any kind. But long habit has attributed a sanctity to this domestic asylum, which ought not to be violated without good cause. It is a privilege, which is dear to the people, perhaps it tends to make them more attached to their homes, and if so, it is a feeling which deserves to be cherished, because it is in the narrow circle of home that the foundation of morals is laid. The violation of the Sabbath is a crime which deserves punishment. But when that violation consists of work, without noise or disorder, there is nothing in it like an actual breach of the peace; nothing of so pressing a nature as to require *351 an immediate and forcible remedy. The serving of legal process on Sunday tends to disturb the quiet of that day, which it is the object of the law, on which this prosecution is founded, to protect. (Act of 22d April, 1794, 3 Sm. Laws, 177). Therefore it is, that the serving of all legal process, is forbidden by another act, (1 Sm. Laws, 25, act of 1705,) except in cases of treason, felony, or breach of the peace. And there is as much reason to apprehend disturbance from an entry for the purpose of making a conviction, as from the serving of process. It is on the ground of a conviction on view of the justice, that the attorney general rests one of his arguments. The act of assembly, says he, authorises a conviction on view, and therefore, it authorises all the means of conviction, one of which is, an entry into the place where the breach of the law is committed. If the premises are true, the conclusion is fairly drawn. But I do not perceive, that where the justice views the offence, an entry is necessary. What he sees, he may record, and convict the offender on the evidence of his own senses. But the argument for the commonwealth goes to prove, that what he does not see with suf-j ficient certainty, he may remedy by an entry for the purpose! of getting a better sight. But that is outrunning the act of assembly, which provides for two modes of conviction, one on view of the justice, the other in the usual way, by proof of witnesses. The justice may take his choice. If his view affords sufficient evidence to satisfy his conscience, he may convict without further proof, but if not, he must pro te the fact by witnesses. In the present instance, his view was, in his own opinion, not sufficient, and therefore he wished to enter. In that he was wrong: He should have summoned the offenders next day, and proceeded against them in the usual manner. But it is said, he did not know them. If he did not know them himself, he should have resorted to those who did know them. Not many offenders will escape for want of being known. It is possible that a few may, and if it should so happen, it will be better, than that an important privilege should be broken down in order to get at them.
I am of opinion, that the verdict was against law, and therefore there should be a new trial.
Ye axes J.
The question which was agitated upon the trial of this indictment before me, is of great importance to *352 the community.' It was strenuously contended on the pari of the commonwealth, that the prosecutor, Joseph Grice, Esq., as a justice of the peace, had a legal right to force his entry into the defendant’s premises against his will, under the circumstances of the case as disclosed in the evidence.
Two men were seen working on shore, in the defendant’s ship yard, upon Sunday. Nine or ten others were seen ,working on board a vessel, which was then building. In order to ascertain who the persons were, who were thus guilty of a breach of the Sabbath, Mr. Grice deemed it his duty to enter the ship yard, which was inclosed by a fence, although opposed therein by the defendant. Independently of the defendant’s resisting the force attempted by Grice, at that time, the great bulk of the testimony did not shew any breach of the peace committed by the defendant. So that the question on this part of the case, was narrowed to a single point, whether the forcible entry of Grice was justifiable or not ? I gave it in charge to the jury, that a justice of the peace had-no right to force himself into the possessions of another, in quest of testimony against the will of the owner ; that in certain specified cases, as treason, felony, pending an affray, where a dangerous wound had been given, for breaches of the peace, or for surety of the peace, a house might be broke open, with or even without a warrant, but I knew of no principle of the common law, or of any injunction by act of assembly extending this power. Although Sabbath breaking was the violation of a divine as well as a human law, I did not consider it as an actual breach of the peace. If such compulsory domiciliary visits to search for offenders, or testimony to convict them, might be made, a man’s house would soon cease to be his castle of defence, and the greatest disorders must arise therefrom. I therefore, instructed the jury, that the entry of Mr. Grice was not justifiable, and that it was of no moment, whether the yard-gate was open or shut, if the defendant opposed his entry. I see no reason whatever, for changing the opinion I delivered to the jury. But it has been urged, that the defendant might well be convicted of an assault on Grice in the execution, of his office, from what passed at the first interview, when the two other justices were present. That matter was not much urged at the trial, nor do I think the evidence warranted the verdict, and more particularly when .it is considered, that though the *353 ■words of the defendant were rude and improper at the time, yet they were accompanied by expressions explanatory of his intentions, which, although Grice complained of, he did ipt suggest to the other justices, that an assault had been committed on him. I concur in setting aside the verdict, and awarding a new trial.
Brackenridge J. delivered an opinion to the same effect, which the reporter has not been able to procure.
New trial granted.