THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WENDELL FLOYD, Defendant-Appellant.

First District (3rd Division)   No. 1—94—4283

Opinion filed March 20, 1996.

Rita A. Fry, Public Defender, of Chicago (Peter D. Bormes, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Alan J. Spellberg, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Wendell Floyd (defendant) appeals from his bench-trial convictions for assault of Nancy Adams, battery of a police officer and four counts of resisting arrest, and the one-year term of conditional discharge imposed on him. Defendant contends that his multiple convictions for resisting arrest violated the rule against multiple convictions based on one act. He also contends that he was not proven guilty of assault beyond a reasonable doubt.

Complainant Nancy Adams (Adams) testified that on October 7, 1993, at approximately 5 p.m., she was standing outside her doctor's

office on Ridge Avenue, a main thoroughfare in Evanston, listening to music on her "Walkman," when she noticed defendant, who was riding his bicycle, stop "kitty corner" from her and appear to be "looking at railroad tracks." He then began to "stare" at Adams. After staring at her for "two or three minutes," defendant crossed the street on his bicycle and came to a stop next to her. According to Ms. Adams, defendant then said, "[y]ou come here, you." An investigating officer related only that defendant said "come here you." There is no evidence that defendant dismounted the bicycle or that he made any other physical or verbal threat to her.

Adams testified that she was "petrified" and believed defendant wished to do her "bodily harm." Adams "ran into the street" yelling for help. Adams was so afraid that she did not look behind her to observe whether defendant was pursuing her, so we do not know whether defendant merely rode away. A passing motorist gave Adams a ride to Evanston Hospital and the police were summoned.

■ Under our statute, an assault occurs when a person engages in conduct which places another in reasonable apprehension of receiving a battery. 720 ILCS 5/12—1(a) (West 1992). Although we examine the emotional effect upon the putative victim, that response must be reasonable. It is not enough that the victim feels "petrified" that the defendant is going to harm her. Such feeling must have a measure of objective reasonableness.

Moreover, the words employed by the person charged with the assault must also be considered. The earliest assault cases under the common law are illustrative. Almost no student goes through law school without being made aware of *Tuberville v. Savage*, 1 Mod. Rep. 3, 86 Eng. Rep. 684 (1699), where the defendant was discharged when, hand upon his sword, he said, "[i]f it were not assize-time, I would not take such language from you," or its American counterpart, *Commonwealth v. Eyre*, 1 Serg. & Rawle 347 (Pa. 1815), "[i]f it were not for your grey hairs, I would tear your heart out." Even throwing a kiss by puckering the lips and then smacking them was not an assault. *Fuller v. State*, 44 Tex. Crim. 463, 72 S.W. 184 (1903).

Even when a statement is made in the imperative, such command or request alone may not rise to the level of assault. Here, defendant said either, "[y]ou come here, you" or "come here you," depending upon which of the State's witnesses you are to believe. The statement is somewhat curious since Ms. Adams also testified that defendant was mounted on his bicycle and very close to her. Moreover, she was listening to music on her "Walkman."

In Illinois, we have held that words alone are not usually enough to constitute an assault. *People v. Ferguson*, 181 Ill. App. 3d 950, 537

N.E.2d 880 (1989). Some action or condition must accompany those words before there is a violation of the statute.

*People v. Preis*, 27 Ill. 2d 315, 189 N.E.2d 254 (1963), should be of particular interest to members of the bar since a conviction for assault was affirmed in a case involving a client, dissatisfied with the level of legal representation, who said to her lawyer, "[t]here is nothing left to do except to shoot you" (27 Ill. 2d at 317) at a time when she had her hand on a handgun in her pocket. Of course, that was before the era in which legal malpractice cases were routinely filed.

Wielding a tire iron while using threatening words has been held an assault. *People v. Alexander*, 39 Ill. App. 3d 443, 350 N.E.2d 144 (1976). Similarly, a defendant, who took unkindly to the universal greeting of "the finger" on a highway was held liable when he threatened to "blow the head off" of the greeter as he opened his trunk apparently to retrieve a shotgun. *People v. Holverson*, 32 Ill. App. 3d 459, 336 N.E.2d 88 (1975). Like these factual situations, a woman confined to a wheelchair had reasonable apprehension where a large man approached her and verbally threatened her with bodily harm. *People v. Rynberk*, 92 Ill. App. 3d 112, 415 N.E.2d 1087 (1980). If a victim has prior knowledge of the violent propensities of the aggressor, conduct which by itself would not allow a finding of reasonable apprehension of danger may be inferred to cause the kind of response in the complainant to bring the matter within the penumbra of the statute. *In re C.L.*, 180 Ill. App. 3d 173, 534 N.E.2d 1330 (1989). No such prior knowledge is present in the case at bar.

■ There is no dearth of examples and we do not minimize the fear engendered by Ms. Adams' encounter with defendant. However, we do not believe that the words used by defendant, even coupled with the fact that he rode his bicycle toward her, rise to the level of assault or that the degree of her apprehension was reasonable. Therefore, we find that the evidence of assault was so unreasonable or unsatisfactory as to create a reasonable doubt of defendant's guilt. See *People v. Peterson*, 41 Ill. App. 3d 1067, 355 N.E.2d 177 (1976).

People who elect to live in large urban communities must put up with a certain amount of unwanted interaction with their fellow citizens and the attendant aggravation. If defendant's actions are the standard for assault under our criminal code, the courts will have little else to do other than hear assault cases. Let us not minimize the anxiety of Ms. Adams. People who live in urban milieu learn to protect themselves and, given her state of emotions, she did the appropriate thing. However, we reverse the conviction for assault under section 12—1(a). 720 ILCS 5/12—1(a) (West 1992).

■ Unfortunately, the day was not quite over for defendant. Po-

lice returned with Adams to the scene, where Adams identified defendant. The police then approached defendant and attempted to place him under arrest. Defendant resisted the officers' efforts and alternatively struggled with several officers, striking police officer Perry-Kelly in the left knee.

An individual commits the offense of resisting arrest when he "knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity." 720 ILCS 5/31—1 (West 1992). Despite defendant's assertion to the contrary, multiple convictions for resisting arrest are appropriate where the record reveals that defendant committed multiple acts of resisting arrest against four separate officers. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996); *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838 (1977).

Defendant's arrest was by no means routine, spanning a 15-minute period and involving "six or seven" police officers responding in waves to defendant's persistent efforts to avoid arrest. Further, this sequence occurred while officers first attempted to handcuff defendant, continued after defendant and four officers fell to the ground and concluded with additional acts of resistance as two other officers attempted to place defendant into a police squad car.

Because defendant committed, at least, four separate acts against four separate officers, his convictions on four counts of resisting arrest were proper. Similarly, defendant's battery conviction, which arose from his kicking and injuring officer Perry-Kelly, was a separate act for which defendant was proven guilty.

Accordingly, we affirm the convictions for battery and resisting arrest and reverse defendant's conviction for assault. This disposition does not affect the trial court's issuance of sentence in this matter.

Affirmed in part; reversed in part.

RIZZI, P.J., and CERDA, J., concur.