# Illinois Official Reports

## Appellate Court

*People v. Taylor*, 2015 IL App (1st) 131290

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. COURTNEY TAYLOR, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-1290 |
| Filed | June 19, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-MC4-000919; the Hon. Kristyna C. Ryan, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Philip D. Payne, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Whitney Bond, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice Palmer and Justice Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1        Following a bench trial, defendant Courtney Taylor was found guilty of aggravated assault based on mere words and then sentenced to six months' supervision. On appeal, defendant contends that the evidence was insufficient to prove her guilty of aggravated assault beyond a reasonable doubt. We reverse.

¶ 2                                            BACKGROUND

¶ 3        The evidence adduced at trial shows that in the afternoon hours of February 15, 2013, defendant was arrested by a deputy sheriff at the Maywood courthouse. The deputy testified that she was working security at the courthouse that day and responded to a call in the bond courtroom. She and her partner asked everyone to step away from the bond room door and then told a woman to put away her cell phone. Defendant was standing next to the woman with the phone and said "f*** you, I don't have my cell phone on." The deputy then asked defendant to leave, and, as the deputy escorted her to the exit of the building, defendant continued to shout at the deputy using profane language. At the exit, defendant entered the first set of automatic airlock doors, which the deputy testified could be easily pulled open. After the doors shut, defendant turned around to face the deputy, who was 7 to 10 feet away outside the doors, and said "I'm going to get you. I'm going to kick your ass." The deputy testified that defendant's comments made her feel that she was "going to receive a battery."

¶ 4        Deputy Sheriff Robert Schaefer testified that he was working security at the front door of the Maywood courthouse when he observed the deputy and defendant, who was yelling profanities, approaching the door. Defendant then walked out the sliding glass door away from the deputy who was directly behind her. As the doors started to close, defendant said "I'm going to get you. I'm going to get your ass." Deputy Schaefer testified that defendant appeared angry, but made no physical gesture, and then left the building after making that statement.

¶ 5        Defendant testified on her own behalf that she was in the bond room on February 15, 2013, to support two of her friends who were charged with felonies. When one of her friends tried to turn around to look at his girlfriend, who was with defendant, one of the court officers told the women to leave the courtroom. In the hallway outside, two sheriffs, one of whom was the deputy, came down the stairs and asked defendant and the woman she was with to step away from the bond courtroom door. The woman who was with defendant took her phone out and the deputy told her to put it away. The deputy told defendant that those were the rules and if she did not like them, she could leave. Defendant responded that she did not have a phone out and did not understand why the deputy was "yelling in [her] face." The deputy again informed defendant that if she did not like the way things were, she could leave.

¶ 6        Defendant decided to do so and observed the deputy running up the stairs after her, asking defendant if she had threatened her. Defendant replied that she did not and then asked for the location of the building exit. The deputy pointed her toward the exit, then followed her out the door, speaking to the two officers standing guard at the front door. Once defendant was outside the door, the deputy told defendant to put her hands up and that she was under arrest.

¶ 7        On cross-examination, defendant testified that she was not upset until the deputy followed her up the stairs and that she maintained a conversational tone throughout their encounter and never shouted any profanities or made any threats toward the deputy. Defendant further

testified that, although she looked back at the deputy when she went through the airlock doors, she did not say anything to her and laughed as she was arrested.

¶ 8 Following closing arguments, the trial court found defendant guilty of aggravated assault. In reaching that decision, the court distinguished the cases cited by defendant which instructed that an assault requires more than mere words. The court noted that this case involved a series of events leading up to defendant's threatening words. The court then reviewed the two versions of the incident and found that it did not believe defendant's testimony. The court concluded that the testimony of the deputy was credible, and even though she and defendant were separated by the airlock doors when the statement was made, the court found that the deputy was placed in fear of an imminent battery and found defendant guilty of aggravated assault.

¶ 9                                                        ANALYSIS

¶ 10 In this appeal from that judgment, defendant argues that the evidence was insufficient to prove her guilty beyond a reasonable doubt because there was no evidence that she performed any physical act or gesture that might have placed the deputy in reasonable apprehension of an imminent battery. Defendant argues that words alone are insufficient to constitute an assault and that some physical act or gesture was required to prove that charge. We agree.

¶ 11 Where defendant challenges the sufficiency of the evidence to sustain her conviction, the reviewing court must consider whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Jordan*, 218 Ill. 2d 255, 270 (2006). This standard of review recognizes the responsibility of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony, to resolve any conflicts and inconsistencies in the evidence, and to draw reasonable inferences therefrom. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). A reviewing court must allow all reasonable inferences from the record in favor of the prosecution and will not overturn the decision of the trier of fact unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011); *People v. Smith*, 185 Ill. 2d 532, 542 (1999).

¶ 12 To sustain defendant's conviction of aggravated assault in this case, the State was required to prove that she knowingly and without authority engaged in conduct which placed the deputy in reasonable apprehension of receiving a battery, knowing that the deputy was a peace officer performing her official duties. 720 ILCS 5/12-2(b)(4)(i) (West 2012). Defendant does not dispute that she knew the deputy was a peace officer acting in her official capacity, but she claims that verbal threats alone were insufficient to establish beyond a reasonable doubt that the deputy was placed in reasonable apprehension of receiving a battery. Defendant argues that an assault requires more than mere words and, since her threats were not accompanied by any physical act or gesture, the State failed to establish the elements of assault. In support, defendant cites to *People v. Floyd*, 278 Ill. App. 3d 568 (1996), and *People v. Ferguson*, 181 Ill. App. 3d 950 (1989), for the proposition that words alone are insufficient to sustain an assault charge, and that the requirement of a physical act or gesture dates back 600 years. *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004).

¶ 13 Viewed in a light most favorable to the prosecution, the evidence presented at trial shows that the deputy responded to a call in the bond courtroom in the Maywood courthouse. Upon

the deputy's arrival outside the courtroom, a dispute broke out concerning a cell phone. Defendant shouted an obscenity at the deputy and was asked to leave the courthouse. The deputy then escorted defendant to the exit while defendant continued to yell at her using profane language. As defendant stood in the airlock doors to the building, she told the deputy, who was on the other side of the doors, 7 to 10 feet away, that she was going to "get [her]" and "kick [her] ass." The deputy testified that she felt that she was "going to receive a battery." The court found the deputy's version of the incident credible and accepted her belief that she was placed in fear of receiving a battery. The trial court concluded that the State proved the offense of aggravated assault beyond a reasonable doubt.

¶ 14    We note, however, that an objective standard applies to the element of reasonable apprehension, *i.e.*, that normally aroused in the mind of a reasonable person, and that this element may be inferred from the evidence presented at trial, including the conduct of defendant and the victim. *In re Gino W.*, 354 Ill. App. 3d 775, 778-79 (2005) (citing *In re C.L.*, 180 Ill. App. 3d 173, 178, 181-82 (1989)). Here, without disturbing the credibility determination made by the trial court regarding the deputy's testimony, we find that the inference drawn by the trial court that the deputy was placed in reasonable apprehension of receiving a battery is not supported by the evidence under this objective standard.

¶ 15    This court has previously observed: "In Illinois, we have held that words alone are not usually enough to constitute an assault. [Citation.] Some action or condition must accompany those words before there is a violation of the statute." *Floyd*, 278 Ill. App. 3d at 570-71. In *Floyd*, this court cited prior appellate court cases as examples of the type of action or condition that is required before words will be considered an assault. For example, "[w]ielding a tire iron while using threatening words has been held an assault" (*Floyd*, 278 Ill. App. 3d at 571 (citing *People v. Alexander*, 39 Ill. App. 3d 443 (1976))), as has saying " '[t]here is nothing left to do except to shoot you' " when the speaker's hand is on a gun (*Floyd*, 278 Ill. App. 3d at 571 (quoting *People v. Preis*, 27 Ill. 2d 315, 317 (1963))). Similarly, in *Ferguson*, 181 Ill. App. 3d at 951, 953, this court held that an assault occurred when defendant drove his vehicle into a standing victim, exited his vehicle, approached within striking distance of the victim, and stated that he was going to " 'kick his ass.' "

¶ 16    By contrast, in the case at bar, defendant was not wielding a tire iron, holding a gun, or driving a vehicle into the victim. The deputy testified that defendant was exiting the building as the deputy had instructed her to do; that defendant was on the other side of automatic airlock doors from the deputy; that, to open these doors once they had shut, someone would have to pull them open; that the deputy was 7 to 10 feet from the shut doors; and that the door had, in fact, shut before defendant turned, faced the deputy and said "I'm going to get you. I'm going to kick your ass."

¶ 17    Based on these facts, we find that no reasonable person could find an assault where there is no evidence that defendant was armed with any weapon and where the deputy, by her own testimony, was 7 to 10 feet from defendant behind airlock doors which would need to be pulled open manually to approach her. Defendant made no physical gesture to the deputy, only the mere words of a verbal threat.

¶ 18    In reaching that conclusion, we are not persuaded by the State's reliance on *Ferguson*, *People v. Ward*, 302 Ill. App. 3d 550 (1998), and *People v. Rynberk*, 92 Ill. App. 3d 112 (1980), to support its "course of conduct" argument regarding the deputy's apprehension of receiving a battery. In *Ferguson*, defendant drove his vehicle into the victim, exited his

- 4 -

automobile, opened his trunk, approached within striking distance and told the victim that if he did not move he had something to move him and that he was going to " 'kick his ass.' " *Ferguson*, 181 Ill. App. 3d at 951, 953. In *Ward*, defendant sprang off a couch with his arms back "as if 'ready to strike' " (*Ward*, 302 Ill. App. 3d at 561) and in *Rynberk*, defendant drove his automobile within a few feet of the victim, advanced toward her, and threatened her with physical harm (*Rynberk*, 92 Ill. App. 3d at 116). These cases are factually distinguishable from the case at bar where there was no evidence that defendant raised her fists, or made any threatening, physical gesture. Rather, the record shows that defendant engaged in a course of conduct, consisting of profanities directed at a law enforcement officer who was ushering her out of the building, and issued a final verbal threat as she exited through the airlock doors, venting her displeasure. In light of the spatial differences, and the other circumstances reflected in the record, the evidence was insufficient to support the trial court's determination beyond a reasonable doubt that the deputy was placed in objective and reasonable apprehension of receiving a battery. We cannot find any Illinois cases that would support a conviction because mere words alone without a gesture objectively does not place a person in reasonable apprehension of receiving a battery. The deputy sheriff in the case at bar was placed in subjective apprehension of a battery; however, Illinois case law instructs us to use an objective standard. *In re Gino W.*, 354 Ill. App. 3d at 778-79. We are mindful that law enforcement personnel have a difficult job in keeping the peace and that their lives are always in jeopardy and at times they are subject to disrespect. However, our job is to follow the existing law, and in this case, we must reverse defendant's conviction for aggravated assault, notwithstanding that an officer of the law was disrespected and threatened.

¶ 19                                                    CONCLUSION

¶ 20         Accordingly, we reverse the judgment of the circuit court of Cook County.

¶ 21         Reversed.