2022 IL App (2d) 210659-U
No. 2-21-0659
Order filed August 15, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-1530 |
| JOHN C. PEMBOR, | ) ) ) | Honorable Brian F. Telander, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse defendant's conviction of aggravated assault of a peace officer. The officer could not have reasonably apprehended a battery when defendant clenched a fist and walked aggressively toward the officer but did not make a verbal threat or raise a fist before dropping to the ground 10 feet from the officer, who was threatening defendant with a taser and telling him to halt.

¶ 2    Following a bench trial, defendant, John C. Pembor, was convicted of aggravated assault of a peace officer (count I) (720 ILCS 5/12-2(b)(4.1)(i) (West 2020)) and disorderly conduct (count II) (720 ILCS 5/26-1(a)(1) (West 2020)). The court sentenced him to 18 months in prison for

aggravated assault. He appeals, arguing that the evidence was insufficient to sustain his conviction of aggravated assault. We agree and reverse that conviction.

¶ 3                                I. BACKGROUND

¶ 4     Count I alleged that defendant, "knowingly and without lawful authority, walked aggressively with his fists clenched toward Officer Alex Kefaloukos of the Elmhurst Police Department," thus putting Kefaloukos in reasonable apprehension of receiving a battery.

¶ 5     The incident occurred on August 22, 2020. Natalie Reyes testified that she and her family were eating at a table outside a restaurant. A man was sitting at another table. The man went inside the restaurant, and defendant approached that table, yelling " 'this old man wants to get his fucking ass beat.' " Defendant complained that the man "thinks he can just leave his napkins all over the table." Reyes suspected that defendant was "either intoxicated or on drugs. He was just all over the place." Afterward, Kefaloukos arrived at the scene. Defendant was "arguing with [the officer] and screaming," and then he "charged off" away from the officer, who told defendant to stop and drop to the ground. Defendant then turned around and "charged" toward Kefaloukos before dropping to the ground. On cross-examination, Reyes admitted that she was distracted by her children during the incident and never provided a written statement.

¶ 6     Kefaloukos testified that he was dispatched to the restaurant. Defendant told him that the owner of the restaurant had allowed "the wind to blow napkins off of his table" and that defendant was "upset because children were in the area and had witnessed this." Defendant said that he "was waiting outside to slap the owner." Kefaloukos described defendant as "angry. He was yelling and swearing about the situation. He was flailing his arms about." Defendant then "took a couple of steps away from [the officer]," "yelling and pointing at [him] to leave him alone. And then he started to run away." Kefaloukos radioed other officers to tell them defendant was fleeing. Then

"defendant stopped and then immediately turned around and then started to *** walk back toward [Kefaloukos] with a purpose." "He was walking quickly. His shoulders were *** hunched over. And his right hand was clenched in a fist." However, defendant did not lift his fist or point it at the officer. Although defendant was still "yelling and swearing," he did not issue any verbal threats. Fearing an "attack," Kefaloukos drew his taser and told defendant to stop. Defendant stopped and lay on the ground roughly 10 feet away from Kefaloukos. At one point, defendant started to get up but returned to the ground in compliance with Kefaloukos's orders. Defendant did not resist being handcuffed and walked to a nearby squad car.

¶ 7     A squad car video, though taken from a substantial distance, confirms that defendant ran away from Kefaloukos, stopped, turned around, and walked quickly back toward him before dropping to the ground. (This portion of the video has no audio.) As officers arrested defendant, he protested: "I didn't charge at him. He said to come here and I turned around and talked to you. You fucking set me up, prick."

¶ 8     The trial court found defendant guilty, ruling that defendant "came at [Kefaloukos] quick, hunched, right-hand fist clenched in an aggressive manner. *** [T]he fact that [the officer] drew his taser certainly showed that he was in reasonable apprehension of receiving a battery." Defendant appealed.

¶ 9                                    II. ANALYSIS

¶ 10     Generally, we may not set aside a conviction unless the evidence was so improbable or unsatisfactory that reasonable doubt of the defendant's guilt remains. *People v. McLaurin*, 184 Ill. 2d 58, 79 (1998). When reviewing a challenge to the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the State, any rational factfinder could

have found the essential elements of the charged crime beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007).

¶ 11 To prove a defendant guilty of aggravated assault as charged here, the State must prove, beyond a reasonable doubt, that the defendant "without lawful authority *** knowingly engage[d] in conduct which place[d] another in reasonable apprehension of receiving a battery" and that the defendant knew that the individual assaulted was a peace officer performing official duties. 720 ILCS 5/12-1(a), 12-2(b)(4.1)(i) (West 2020). Defendant argues that the evidence was insufficient to prove that Kefaloukos was in reasonable apprehension of receiving a battery. We agree.

¶ 12 The video supports Kefaloukos's testimony that defendant walked toward him aggressively,[1] and on appeal defendant admits that he "was agitated, yelling, and cursing throughout the incident." However, as Kefaloukos admitted, defendant did not raise his fist or make any verbal threats. And, when Kefaloukos drew his taser to forestall an "attack," defendant was roughly 10 feet away. These facts simply fail to sustain the inference that Kefaloukos was in reasonable apprehension of receiving a battery. See *People v. Taylor*, 2015 IL App (1st) 131290, ¶¶ 3, 17 (apprehension unreasonable where defendant threatened to " 'kick [an officer's] ass' " from 7 to 10 feet away, through doors that "could be easily pulled open"); see also *DePree v. Saunders*, 588 F.3d 282, 291 (5th Cir. 2009) (apprehension unreasonable where defendant " 'aggressively walk[ed] toward [plaintiff], yelling at [him], repeatedly referring to [him] as a

---

[1]The video establishes that defendant did not run toward Kefaloukos, which refutes Reyes's testimony that defendant "charged" at him. The State asserts that the video shows that defendant was "moving at an increasing rate of speed toward[ ] the officer." This is not clear from the video, and was not testified to by Kefaloukos or found by the trial court.

"son-of-a-bitch," and shaking papers in his face' "); *Jones v. Shipley*, 508 S.W.3d 766, 770 (Tex. Ct. App. 2016) ("The act of walking 'aggressively' toward John Doe and shaking [a] finger at him, together with the vague verbal threat to 'get' him, does not support a reasonable inference *** that [defendant] made an objective threat to inflict imminent bodily injury."). The State cites no case holding otherwise.

¶ 13　The trial court ruled that the fact that Kefaloukos drew his taser "certainly showed that he was in reasonable apprehension of receiving a battery." But of course, Kefaloukos's act of drawing his taser showed only that he had a *subjective* apprehension of receiving a battery. Whether his apprehension was *reasonable* is judged using an objective standard. *Taylor*, 2015 IL App (1st) 131290, ¶ 14. As defendant himself observes, defendant "was clearly suffering from some kind of mental health crisis during the incident." Nevertheless, defendant's merely walking aggressively with a clenched fist to a point roughly 10 feet away from the officer was insufficient to establish that the officer's apprehension was reasonable.

¶ 14　　　　　　　　　　　　III. CONCLUSION

¶ 15　For the reasons stated, we reverse the judgment of the circuit court of Du Page County convicting defendant of aggravated assault.

¶ 16　Reversed.