2024 IL App (1st) 220212-U

No. 1-22-0212

Order filed March 1, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19122781401 |
| | ) | |
| TONY CHANEY, | ) | Honorable |
| | ) | Clarence Burch, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for aggravated assault of a transit employee affirmed where witness testimony and video evidence established that defendant's verbal threat and physical conduct placed the victim in reasonable apprehension of an imminent battery.

¶ 2    Following a jury trial in which he represented himself, defendant Tony Chaney was convicted of aggravated assault of a transit employee and sentenced to six months' court supervision. On appeal, Chaney contends the State failed to prove him guilty beyond a reasonable

doubt because the evidence did not prove that his conduct placed the victim in reasonable apprehension of an imminent battery. We affirm.

¶ 3     Chaney was charged by complaint with one count of aggravated assault of a transit employee, premised on his knowingly placing Chicago Transit Authority (CTA) driver Oretias Hall in reasonable apprehension of receiving a battery (720 ILCS 5/12-2(b)(8) (West 2018)).

¶ 4     At trial, Hall testified that he was employed as a CTA bus driver. On November 14, 2019, Hall was wearing his CTA uniform comprising a shirt, tie, and hat with the CTA emblem and badge number displayed on them. At about 10 p.m., Hall was driving his regular route when he started having difficulty with his bus. He pulled to the side of the road and exited the bus. While Hall inspected the bus, Chaney, whom Hall identified in court, approached him "face to face." Hall asked what he could do for Chaney, who replied, "I want to whip your a***." Hall then testified:

> "And I said, 'Well sir, I don't have no problem with you, but that's not going to happen. I am not going to let you whip my ass.' Then he request me to still on him, which anybody knows what – that means to me, he wanted me to hit him. And I said, 'I am not going to hit you because I don't have any problem with you.' I said, 'But what I am going to do, I am going to be the bigger person. I am going to walk away.' "

Hall then entered the bus.

¶ 5     After he entered the bus, Hall turned to face Chaney, who pulled what looked like a firearm from his pocket. Hall told Chaney, "it's not that serious." Hall panicked because he was not expecting Chaney to brandish a weapon. Hall tried to verbally calm Chaney down while backing away and tried to reach the bus's emergency panic button. Once Hall pressed the panic button,

Chaney fled down the sidewalk. Hall then called the controller to report what happened and to provide a description of Chaney.

¶ 6      When Chaney pulled the weapon, Hall's "life flashed before his eyes." Hall had never had a firearm pulled on him before and was concerned for himself and the passengers, who included a mother and some children. Hall was concerned that he might get hurt or killed or a child might accidentally be shot. The lighting on the bus was "decent," and Chaney was directly in front of Hall's face, so Hall got "a very good look at him."

¶ 7      Hall's bus was equipped with a surveillance camera which recorded the incident but does not record audio. The video was admitted into evidence and published over Chaney's objection that the video had no audio. Hall identified Chaney on the video.

¶ 8      This court viewed the CTA video, which depicts different angles of the interior of the bus and some angles of the exterior of the bus. The footage from the exterior depicts Chaney approaching Hall from the corner of Kimball and Fullerton Avenue while Hall is outside the bus. Chaney is visibly agitated and aggressively pointing and gesturing at Hall, who cannot be seen during this part of the video. Hall then walks away from Chaney and enters the bus as passengers disembark. Chaney seemingly yells at Hall from outside the bus while moving from the side to the front door.

¶ 9      Chaney waits for passengers to move out of the doorway. Then, Chaney blocks the doorway with his body, drops the bag he is carrying in his left hand while reaching into his right coat pocket with his right hand, and pulls a dark object from his pocket. At this point, Chaney is standing in the bus door, a few feet from Hall, as Hall stands in front of the driver's seat facing Chaney. Chaney raises his arm, and Hall immediately jumps back to the passenger compartment

of the bus with his hand extended. Hall has a scared expression throughout this interaction with Chaney, who points aggressively at Hall while appearing to yell at him.

¶ 10    Once Chaney sees Hall press the panic button, Chaney begins to walk away from the bus door. Hall walks back to the passenger area of the bus. Once Hall sees that Chaney is walking away, he takes out his cell phone and closes the bus doors. After Chaney reaches the corner of Fullerton and Kimball, Hall opens the doors and looks in Chaney's direction. Several passengers including a woman and at least three small children can be seen in the back of the bus.

¶ 11    Hall further testified that when Chaney drew the weapon, Hall backed away to reach the panic button because it is the quickest way to summon police. Hall feared for his life because he did not know what Chaney would do with the weapon and backed away from Chaney so that Chaney could not "get a clear shot." Eventually, Chicago police arrived on scene. Chicago police officers brought Chaney back to the bus for Hall to identify in less than 10 minutes.

¶ 12    On cross-examination, Hall acknowledged he had seen Chaney prior to November 14, 2019. Hall did not recall an alleged incident between the two men on October 15 while Hall was driving his usual Kimball-Homan Avenue CTA route. Hall was also unaware of a complaint having been filed against him by Chaney relating to an October 15 incident.

¶ 13    On redirect examination, Hall testified that he believed the object Chaney drew was a firearm because of "[t]he way he pulled it and his motion *** like he was pulling a gun."

¶ 14    On re-cross examination, Chaney played a portion of the CTA video and questioned Hall about what Chaney appeared to be holding. Hall responded that it looked like a flashlight. The record is unclear as to which portion of the video Chaney questioned Hall about.

¶ 15    Chicago police officer Jose Negrete testified that about 10 p.m. on November 14, 2019, he and his partner responded to a call of a person with a firearm. They met with Hall who said he was threatened with a knife or a firearm and described the offender. Negrete sent out a flash message via police radio, toured the area, and within 10 minutes located an individual who matched Hall's description. When officers told the individual to show his hands, he reached into his pocket and dropped something on the ground. Negrete's partner recovered the item, a knife.

¶ 16    Chaney testified that he rode the Kimball-Homan bus line for years. Chaney described an encounter with Hall on October 15, during which Hall asked Chaney to leave the bus even though he had paid his fare. Chaney filed a complaint against Hall but did not think the CTA did anything. Whenever Hall saw Chaney after that, Hall would flip Chaney off. Chaney then referred to the CTA video stating, "if you see that video, it doesn't show he recognized me."

¶ 17    Chaney described himself as the "victim" and contended that Hall was deceiving the jury because Hall no longer worked the Kimball-Homan bus line. Chaney testified that on November 14, 2019, he was standing at the corner of Fullerton and Kimball before Hall's bus broke down. Chaney then asked, "how was I supposed to know he was going to be there?" He also testified that Hall approached him, and that Hall was the initial aggressor.

¶ 18    On cross-examination, when asked why, if he was the victim, he did not walk away from the situation, Chaney replied, "I am not the type to just walk away. He approached me, and I am going to defend myself." When asked why he followed Hall to the bus, Chaney stated, "I did, but I didn't. *** I approached the bus door, that was it." When asked about the item Chaney pulled from his pocket, Chaney did not directly answer the question, but rather asked the prosecutor

questions. Chaney ultimately acknowledged that he knew Hall is employed by the CTA and that Hall was in CTA uniform on the night of November 14, 2019.

¶ 19 During the State's closing argument, the prosecutor referred to Chaney removing something from his pocket. Chaney interjected that it was a "cell phone." During Chaney's closing argument, he stated that he carries a "flashlight" which was the object he showed Hall.

¶ 20 The jury found Chaney guilty of aggravated assault of a transit employee.

¶ 21 Chaney, via a public defender appointed for posttrial matters, filed a motion for a new trial and amended motion for a new trial or judgment notwithstanding the verdict. After a hearing, the trial court denied the motions and sentenced Chaney to six months' court supervision. Chaney did not file a motion to reconsider his sentence.

¶ 22 On appeal, Chaney contends that the State failed to prove beyond a reasonable doubt that his conduct placed Hall in reasonable apprehension of a battery. Chaney argues that the jury had to rely solely on the "vague" testimony of Hall which, Chaney asserts, reflects that Hall's apprehension of a battery was not reasonable.

¶ 23 The State responds that Chaney's verbal threats and physical conduct placed Hall in reasonable apprehension of an imminent battery.

¶ 24 When a defendant claims the evidence is insufficient to sustain his conviction, this court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). This standard applies whether the evidence is direct or circumstantial. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Under this standard, all reasonable inferences from the evidence

must be allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. A reviewing court must allow all reasonable inferences from the record in favor of the prosecution and will not overturn the decision of the trier of fact unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *People v. Taylor*, 2015 IL App (1st) 131290, ¶ 11.

¶ 25 The credibility of the witnesses, the weight to be given their testimony, the resolution of conflicts in the evidence, and the reasonable inferences to be drawn from the evidence are within the province of the trier of fact, and a reviewing court will not substitute its judgment on these matters. *People v. Gray*, 2017 IL 120958, ¶ 35. Because the trial court has the best opportunity to observe the demeanor and conduct of the witnesses, it is in the best position to determine the credibility and weight to be given to the witnesses' testimony. *In re Stephen K.*, 373 Ill. App. 3d 7, 20 (2007).

¶ 26 To prove defendant guilty of aggravated assault of a transit employee as charged, the State was required to show that he (1) committed assault, *i.e.*, without lawful authority, knowingly engaged in conduct which placed Hall in reasonable apprehension of receiving a battery, and (2) knew Hall was a "transit employee performing his or her official duties." 720 ILCS 5/12-1(a) (West 2018) (assault); 720 ILCS 5/12-2(b)(8) (West 2018) (aggravated assault). A person commits battery if he knowingly, without legal justification, by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual. 720 ILCS 5/12-3(a) (West 2018).

¶ 27 The aggravating factors elevating assault to aggravated assault, namely that Chaney knew Hall was a CTA driver and was performing in such capacity during the incident, are not in dispute.

The only issue on appeal is whether the State proved that Chaney committed assault, in this case that Chaney's conduct placed Hall in reasonable apprehension of receiving a battery.

¶ 28    This court has held that words alone are not usually enough to constitute an assault. *People v. Floyd*, 278 Ill. App. 3d 568, 570 (1996). Some action or condition must accompany those words before there is a violation of the statute. *Id*. at 571. Moreover, whether an assault victim was reasonably apprehensive is a question of fact. *People v. Vanhoose*, 2020 IL App (5th) 170247, ¶ 25. A victim's apprehension can be established inferentially based on the conduct of the defendant and the victim. *Id*.

¶ 29    Here, viewing the evidence in the light most favorable to the State, it supports the jury's finding that Chaney's conduct placed Hall in reasonable apprehension of receiving a battery. Chaney approached Hall while Hall was outside inspecting his bus, stood "face to face" with Hall, and threatened Hall by saying, "I want to whip your a***." When Hall walked away from Chaney and entered the bus, Chaney then stood in the doorway, facing Hall from a few feet away. Chaney reached into his pocket, retrieved what Hall perceived to be a weapon, and raised his arm. Hall testified he feared he would be hurt or killed. Hall's reaction to Chaney's conduct is apparent in the video when Hall jumps away from Chaney so that, according to Hall, Chaney "could not get a clear shot."

¶ 30    In the video, as Hall reaches for the panic button to summon police, Chaney aggressively points, and Hall has a scared expression. Chaney does not retreat until the moment he sees Hall press the panic button. Hall's conduct after Chaney leaves also indicates his apprehension of a battery in that he goes back to the passenger area of the bus, calls for help on his cell phone, closes the doors to the bus, and, from that safe vantage point, watches where Chaney goes. Where Chaney

threatened Hall, followed him to the front door of the bus, and then brandished an object at him from only a few feet away, a rational trier of fact could find that Chaney's conduct caused Hall's reasonable apprehension that Chaney would cause him bodily harm or make physical contact of an insulting or provoking nature with him or others on the bus.

¶ 31 Chaney argues that the State could not prove whether he threatened Hall with a firearm, knife, cell phone, flashlight, or some unknown object. The object Chaney threatened Hall with is not dispositive of Hall's reasonable apprehension of receiving an imminent battery. Use of an object or weapon during commission of the offense is not an element of battery or assault. See 720 ILCS 5/7-1(a), 7-3(a) (West 2018). Although use of a weapon during commission of the offense can elevate assault to aggravated assault (see 720 ILCS 5/12-2(c) (West 2018)), Chaney was not charged with that aggravating factor. He was charged with aggravated assault solely under subsection 12-2(b)(8), the aggravating factor "based on the status of the victim," here a transit employee. 720 ILCS 5/12-2(b)(8) (West 2018). Chaney's physical proximity to Hall while aggressively pointing and yelling, dropping his bag, retrieving a dark object from his pocket, and raising his arm and the object at Hall, taken with Hall's testimony that, because of Chaney's conduct, he was afraid Chaney would hurt him, supports the jury's conclusion that Chaney's conduct placed Hall in reasonable apprehension of receiving an imminent battery.

¶ 32 Chaney likens this case to *VanHoose*, *Taylor*, and *Floyd*, but each case is distinguishable. In *VanHoose*, the defendant threatened the victim by saying, "I'm going to kill you," then left on a motorcycle. *VanHoose*, 2020 IL App (5th) 170247, ¶ 12. The victim testified that, at the time the threat was made, he and the defendant were 15 to 20 feet apart, and there was a retaining wall between them. *Id.* This court reversed the defendant's assault conviction because the defendant

and the victim were not in close proximity and because no evidence established that the defendant made any physical movement or gesture of a threatening nature toward the victim. *Id*. at ¶ 32.

¶ 33    Likewise, in *Taylor*, no assault occurred where the defendant verbally threatened the victim without any physical gesture or conduct toward her and while separated by a set of automatic airlock doors. *Taylor*, 2015 IL App (1st) 131290, ¶ 17. In *Floyd*, the defendant crossed the street on a bicycle, stopped next to the victim and said, "you come here, you," then the victim ran away. *Floyd*, 278 Ill. App. 3d at 570. This court reversed the defendant's conviction for assault, as no evidence showed that the defendant made any physical or verbal threat to the victim, made any physical conduct or gesture, or that he dismounted the bicycle. *Id.*

¶ 34    In *Vanhoose*, *Taylor*, and *Floyd*, there were threatening words but no physical conduct or gesture accompanying the threats. There was also distance between the parties in each case. Here, in contrast, Chaney's conduct did not end after a verbal threat. After verbally threatening physical harm against Hall, Chaney followed Hall to the bus, waited until passengers got out of his way, blocked the bus doorway with his body, retrieved an object from his pocket, raised his arm and the object, and continued to yell and aggressively point at Hall. See, *e.g.*, *People v. Ferguson*, 181 Ill. App. 3d 950, 951 (1989) (affirming conviction for assault where the defendant drove toward the victim, exited his vehicle, approached within striking distance, and stated that he would "kick his a***").

¶ 35    Here, the record supports the jury's finding that Chaney made a verbal threat to Hall which was followed by physical conduct and gestures that placed Hall in reasonable apprehension of receiving an imminent battery. Accordingly, we find no basis to disturb the jury's verdict.

¶ 36    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37    Affirmed.