2026 IL App (1st) 231494-U

No. 1-23-1494

Order filed January 30, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 13346 |
| | ) | |
| DEJUAN COOPER, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for aggravated assault is affirmed, where the evidence was sufficient to convict him.

¶ 2    Following a bench trial, defendant Dejuan Cooper was found guilty of aggravated assault (720 ILCS 5/12-2(c)(1) (West 2022)) of his father Lee Gaines and sentenced to ten days' detention in Cook County Jail, time considered served. The court also entered a two-year order of protection against Cooper and in favor of Gaines. On appeal, Cooper contends the State failed to prove him

guilty beyond a reasonable doubt because the State's only evidence against him was Gaines's impeached and improbable testimony. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      Cooper was charged by indictment with armed violence, possession of cannabis with intent to deliver, possession of cannabis, two counts of aggravated unlawful use of a weapon, and aggravated assault, stemming from an incident that occurred inside Gaines's home on November 6, 2022. The State proceeded to trial on all counts.

¶ 5      At trial, Gaines testified that he resides in the 800 block of East 88th Street. He explained that he did not have much of a relationship with his son Cooper but would permit him to come "in and out." In the early morning of November 6, 2022, Cooper called Gaines to come inside. When he let Cooper in, Gaines heard him talking on the phone threatening to shoot and kill someone.

¶ 6      When Gaines asked Cooper what was going on, Cooper "got belligerent" and said he was going to shoot Gaines, the dog, and neighbors. Cooper then put a bullet in the chamber of the gun he was holding and pointed it at Gaines. Gaines walked away, but Cooper pointed the gun at his back. Gaines felt the gun touch his back, testified he was scared, pushed Cooper back, and left. Gaines described the gun as having a regular magazine and light beam on it.

¶ 7      Before returning home that evening, Gaines called the police and had officers meet him there so Cooper would leave. When the officers entered the home they found firearms, cannabis, money, and drug-related paraphernalia, which Gaines said was not his.

¶ 8      On cross-examination, Gaines denied telling the officers where they could purchase cannabis and explaining to the officers what a "roller" was. Gaines also denied accusing Cooper of stealing his T.V. Gaines acknowledged that he retrieved a scale from the kitchen and showed it

to the officers. He also said he did not see Cooper enter the house with the gun because Gaines "opened the door and laid down." He explained that when officers left the house, they left the $2,000 that was found upstairs. Gaines denied touching the money or "any of the items that were upstairs." The officers returned to the house about 1:00 a.m. and collected the money.

¶ 9    Chicago police officer Cody Esparza testified that about 10:30 p.m. on November 6, 2022, he and his partner, officer Sebastian Gonzalez, responded to Gaines's house and met with him outside of the residence. Esparza entered the house, saw Cooper at the top of the stairwell, and Gonzalez detained him while Esparza searched upstairs, recovering two firearms. One of the firearms was a handgun with an extended magazine and the other had a laser site attachment. The officers left cash and "narcotics equipment," including plastic Ziplock baggies, and two scales, at the house. Esparza returned to the house about 1:00 a.m. and recovered the items.

¶ 10    On cross-examination, Esparza testified that Cooper admitted owning the two firearms and had a valid FOID card. Esparza could not recall if Gaines told him where he could buy cannabis, but in the body-camera footage, Gaines can be heard informing officers where cannabis could be purchased in the area and identifying a "roller." The body-camera footage also shows money "strewn about the table," a scale, and baggies.

¶ 11    Officer Gonzalez testified consistently with Esparza's testimony. He added that, aside from Gaines and other officers, Cooper was the only other person inside the house when the officers arrived. In the upstairs area of the house, Gonzalez found three large bags of cannabis near a table with some scales and baggies on it. Each of the three bags contained multiple smaller bags of cannabis. The State published a video from Gonzalez's body camera and Gonzalez narrated the recovery of the bags of cannabis.

¶ 12    During closing arguments, defense counsel argued that the State's entire case rested on Gaines's false and incredible testimony. Counsel noted that, despite hearing Cooper on the telephone making threats, Gaines did not tell anyone about this and "[t]he first time he says that is today." Counsel pointed to Gaines's failure to tell police about the threats Cooper made over the phone, his inability to remember what he was doing after leaving the house following the incident, and his testimony that he first returned to the house in the morning not at night, as evidence of his incredibility. Counsel asked the court to take notice of the discrepancies in two photographs of still shots from Gonzalez's and Esparza's body-worn camera footage. Counsel argued the first photo showed an empty table of items as Gonzalez was recovering the cannabis, while the second photo showed "new baggies that are laid out, new rolls of bags that are laid out, the scale from downstairs has been moved upstairs, the money is now laid out, and this all took place when only Mr. Gaines is in the home[.]" Counsel also pointed out that, although Gaines testified that Cooper placed a bullet in the chamber of the gun, the State did not present any evidence that either of the two firearms was loaded.

¶ 13    The trial court found Cooper guilty of aggravated assault and not guilty of the remaining charges. In announcing its ruling, the court noted that the case involved a "father and son that hate each other." The court explained that Cooper "can have a gun," but what he "can't do though is point the gun at [his] father, and that's what he did here." The court noted that the evidence showed "some of the scales going upstairs and downstairs and different places at different times" and gave Cooper the benefit of the doubt as to the cannabis and "the gun charges."

¶ 14    Cooper filed a motion to reconsider the finding of guilt, arguing the State failed to prove him guilty of aggravated assault beyond a reasonable doubt because the only evidence against him

was the incredible testimony of Gaines, who was impeached numerous times, and whose claim that Cooper pointed a gun at him was unsubstantiated. Cooper argued that Gaines was impeached, not only through his own testimony, but by the State's other witnesses and the officers' body-camera footage. Cooper also noted that Gaines never testified that he was placed in a reasonable apprehension of receiving a battery, and that his actions of pushing past Cooper to exit the house did not support an inference that Gaines was experiencing apprehension.

¶ 15    After hearing arguments, the court denied Cooper's motion to reconsider, and sentenced Cooper to ten days' detention in Cook County Jail, time considered served. The court also entered a two-year order of protection against Cooper and in favor of Gaines. Cooper appeals, challenging the sufficiency of the evidence to sustain his conviction.

¶ 16                                    ANALYSIS

¶ 17    When considering a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Jones*, 2023 IL 127810, ¶ 28; *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). We will not retry the defendant or substitute our judgment for that of the trier of fact on questions involving the credibility of witnesses or the weight of the evidence. *Jones*, 2023 IL 127810, ¶ 28. We allow all reasonable inferences in favor of the State and will not reverse unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Id.*

¶ 18    In order to sustain Cooper's conviction for aggravated assault, the State had to prove beyond a reasonable doubt that Cooper, in committing an assault, used a deadly weapon other than by discharging a firearm. 720 ILCS 5/12-2(c)(1) (West 2022). "A person commits an assault when,

without lawful authority, he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1(a) (West 2022). A battery occurs when a person "knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a) (West 2022).

¶ 19    "Whether the victim was placed in reasonable apprehension of receiving a battery is a question that the fact finder must resolve." *In re Gino W.*, 354 Ill. App. 3d 775, 777-78 (2005). The existence of reasonable apprehension may be established inferentially based on the conduct of the defendant and the victim. *Id.* at 778; see also *People v. Vanhoose*, 2020 IL App (5th) 170247, ¶ 25. Although we examine the emotional effect upon the victim, it is not enough that the victim feels that the defendant is going to harm him. *People v. Floyd*, 278 Ill. App. 3d 568, 570 (1996). Rather, "reasonable apprehension is an objective standard, meaning that the apprehension must be one which would normally be aroused in the mind of a reasonable person." (Internal quotation marks omitted.) *Gino W.*, 354 Ill. App. 3d at 779. In addition, "a victim's apprehension must be of an immediate or imminent battery, not of an indeterminate future harm." *Vanhoose*, 2020 IL App (5th) 170247, ¶ 26 (citing *People v. Kettler*, 121 Ill. App. 3d 1, 6 (1984)).

¶ 20    After reviewing the evidence in the light most favorable to the State, we find that a rational trier of fact could conclude that all essential elements of aggravated assault were established, including that Gaines reasonably apprehended an immediate battery. The evidence adduced at trial showed that Cooper, who was "belligerent," told Gaines he was going to shoot him, "the dog and [the] neighbors." Cooper was holding a firearm at the time, "put one in the chamber," and pointed the gun at Gaines.

¶ 21    As Gaines walked to the front of the house, Cooper "came behind" him with the firearm, "pointed it in [his] back," and Gaines felt the firearm touch his back. See *Floyd*, 278 Ill. App. 3d at 570 ("words alone are not usually enough to constitute an assault"; "[s]ome action or condition must accompany those words before there is a violation of the statute"); see also *Vanhoose*, 2020 IL App (5th) 170247, ¶ 27 (physical movement or gestures of a threatening nature "are required before threatening words may be considered to be an assault"). Gaines testified he was scared and left the house. He also felt the need to call police to remove Cooper from his home.

¶ 22    Based on this evidence, the trier of fact could reasonably find the combination of Cooper's words and actions placed Gaines in a reasonable apprehension of receiving a battery from Cooper and that the evidence presented was sufficient to prove Cooper guilty of aggravated assault beyond a reasonable doubt. Indeed, a reasonable person would feel apprehension of suffering imminent bodily harm where an agitated person with a gun threatened to kill the person, a dog, and neighbors, loaded a bullet into the gun, pointed it at the person, and then prodded the person in the back with the gun as the person tried to leave. See *Gino W.*, 354 Ill. App. 3d at 779; *People v. Ferguson*, 181 Ill. App. 3d 950, 954 (1989) (evidence of a defendant's verbal threat to the victim at close range, combined with the hostility and anger evident in the defendant's remarks to the victim and the temperament exhibited by the defendant toward the victim, was sufficient to support the conclusion that the victim was placed in reasonable apprehension of receiving a battery); *People v. Peterson*, 41 Ill. App. 3d 1067, 1069 (1976) (finding the defendant, who swung at a victim and challenged him by saying, "Come on, just you and me," engaged in "menacing conduct" sufficient to establish that the victim "was placed in reasonable apprehension of receiving a battery").

¶ 23    Cooper nevertheless argues that his conviction should be reversed because Gaines's testimony was incredible and impeached.

¶ 24    First, Cooper argues that Gaines testified he overheard Cooper threaten someone over the phone, but never mentioned this to the authorities, despite three 911 calls and two police visits to the house that day. Gaines also did not inform authorities that Cooper pointed a gun at him until 15 hours after the supposed incident, when the police arrived at his house for the second time.

¶ 25    Second, he argues that although Gaines testified that Cooper put a bullet in the chamber of the gun, no evidence showed that any bullets were recovered by police in Cooper's firearms or inside the house.

¶ 26    Third, he argues that despite testifying he was afraid because Cooper pointed a gun at him, the record shows Gaines walked directly towards Cooper and pushed past him to exit the house. Cooper maintains that this behavior is contrary to human experience and belies the inference that Gaines was in reasonable apprehension of receiving a battery.

¶ 27    Fourth, Cooper argues that, when Gaines told police that Cooper pointed a gun at him, Gaines simultaneously made other questionable accusations against Cooper in front of the officers to prompt them to remove him from the house. For instance, he accused Cooper of smoking and selling cannabis and said Cooper stole his T.V. Cooper notes that Gaines abandoned these accusations at trial and did not testify to them under oath. He maintains that this is unsurprising because the trial evidence suggested that Gaines was the one selling drugs.

¶ 28    Fifth, Cooper argues that portions of Gaines's testimony were impeached with the officers' body-camera footage showing that Gaines told officers he knew where to purchase cannabis and described cannabis "rollers" to them.

¶ 29    Finally, Cooper argues that Gaines was not a credible witness because the evidence shows he was eager to have Cooper arrested and removed from the house. As evidence of Gaines's eagerness, Cooper notes Gaines provided the officers with additional evidence against Cooper in the form of a scale and "manipulated the cannabis evidence police originally believed belonged to [Cooper]—adding the second scale as well as plastic baggies, and fanning out the cash on the table—before the police returned to collect that evidence." In essence, Cooper maintains the evidence shows Gaines was angry at Cooper, but not afraid of him.

¶ 30    Cooper's counsel raised all these arguments during closing arguments and in his motion to reconsider, giving the trial court an opportunity to closely scrutinize Gaines's testimony and credibility. Notwithstanding the discrepancies in his testimony, the court found Cooper guilty and denied his motion to reconsider, stating:

> "[I] listened carefully to all the evidence, and did find there were some shades of gray in this case. And accordingly, as to every one of those other counts, I acquitted [Cooper]; but I do believe that the only reason the police got involved in the first place, the real capper, what put it over the top for the complainant was his son pulled a gun on him, and he called the police asking for help and they found the gun where it was supposed to be."

¶ 31    The trial court saw and heard Gaines's testimony firsthand and was in a much better position than us to determine his credibility and the weight to be given his testimony. Likewise, it was for the trial court to find that Gaines's testimony, coupled with other evidence, was sufficient to support Cooper's convictions, and it was for the trial court to resolve any discrepancies that appeared. We will not substitute our judgment for that of the trier of fact on issues like these,

squarely involving the weight of evidence or the credibility of witnesses. See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009). Nor will we set aside a conviction unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of guilt.

¶ 32    Here, it is not. Despite defense counsel's extensive arguments challenging Gaines's credibility, the court found Cooper guilty of aggravated assault, specifically noting that Cooper "can have a gun," but what he "can't do though is point the gun at [his] father, and that's what he did here." This signifies the court found Gaines credible as to the material evidence underlying Cooper's aggravated assault conviction, and we will not reverse simply because the evidence is contradictory or because Cooper claims Gaines was not credible. See *id.* at 228.

¶ 33    After reviewing the entire record in the light most favorable to the State, we hold that Gaines's testimony was sufficient to prove Cooper guilty beyond a reasonable doubt of aggravated assault and that the evidence was not so improbable or unsatisfactory that no rational trier of fact could have also found Cooper guilty. Accordingly, we affirm Cooper's aggravated assault conviction.

¶ 34    Affirmed.